WILLIAM J. MABRY, JR. v. FULLER-SHUWAYER CO., LTD.

No. 8026SC508

(Filed 6 January 1981)

**Constitutional Law § 24.6; Process § 14.3— personal jurisdiction over foreign corporation — minimum contacts with N.C.**

In an action to recover damages for breach of an employment contract, defendant foreign corporation had sufficient minimum contacts with N. C. to subject it to the *in personam* jurisdiction of our courts under G.S. 1-75.4 (1)(d), G.S. 55-145 (a)(2), and the Due Process clause of the Fourteenth Amendment where defendant's agents at least twice solicited applications for employment by advertising in a newspaper of wide circulation in this State; defendant's agents on two occasions came into this State to recruit employees for defendant, at which time they used State roads and air facilities owned and operated by the State or municipalities therein; on both trips into this State defendant's agents rented and occupied rooms in hotels licensed and regulated by the State; defendant's agents carried on long distance telephone conversations with an indeterminate number of residents of this State; defendant's agents met with and interviewed as many as 62 N. C. residents while in Charlotte; defendant's agents sent through the mail approximately 28 letters containing conditional offers of employment which N. C. residents received at their homes; defendant's agent employed at least 19 of these 28 N. C. residents; the residents employed were flown from N.C. to N. Y. at defendant's expense to sign employment contracts; and plaintiff was a resident of N. C. at the time he entered into an employment contract with defendant.

APPEAL by defendant from *Burroughs, Judge.* Order entered 7 February 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 2 December 1980.

This is an action for damages for breach of an employment contract. The plaintiff is a resident of North Carolina and the defendant is a foreign corporation organized under the laws of Saudi Arabia. Service upon the defendant was made by delivering a copy of the summons and complaint by certified mail to an agent of the defendant at its address in New York.

Defendant Fuller-Shuwayer Co., Ltd. is a construction company involved in various projects in Saudi Arabia. The company is a limited liability association existing by virtue of a memorandum of association and has no office or registered agent in the United States. Seventy percent of the association is owned by George A. Fuller Company, a division of the Northrop Corporation of California and thirty percent is owned by Abdullah Al-Hamoud Al-Shuwayer of Saudi Arabia. In an order entered 17 August 1979, defendant was found to have vested in George A. Fuller Company, "broad executive responsibility on a continuing basis" for the hiring of employees to work for defendant. Defendant has not appealed from that order and does not contest the authority of George A. Fuller Company to act on its behalf. Defendant does, however, contest the *in personam* jurisdiction of the North Carolina Courts based on the limited activities in this State of defendant's agent, George A. Fuller Company. On 5 September 1979 defendant moved pursuant to G.S. 1A-1, Rule 12 (b) (2) for dismissal of plaintiff's complaint.

At the hearing on this motion, a review of the pleadings, the exhibits attached thereto, several affidavits, and the answers to the plaintiff's interrogatories, revealed uncontroverted facts as follows:

On 22 January 1978, defendant advertised in the Charlotte Observer for employees to work in Saudi Arabia listing the telephone number of George A. Fuller Company in New York City to call for information. Plaintiff called that number and was advised that on a certain date defendant would have a representative at a Charlotte hotel to interview prospective employees. Plaintiff was invited to attend. He appeared along with several other prospective employees and was interviewed on that date. An employee for the George A. Fuller Company interviewed the prospective employees in his hotel room explaining to them the terms of the employment contract of

Mabry v. Fuller-Shuwayer Co.

Fuller-Shuwayer Co., Ltd. On 9 February 1978, George A. Fuller Company, acting for defendant, wrote plaintiff at his residence in Concord, and conditionally offered to enter into an employment contract with him provided that he, "meet the qualification for the position as established by George A. Fuller Company" and that he "[be] found physically qualified." Subsequently, plaintiff was flown to New York City by an air ticket paid for by defendant through George A. Fuller Company. From the airport defendant transported him to the New York City offices of George A. Fuller Company, 595 Madison Avenue. While plaintiff was in New York City he was given a physical examination by the Life Extension Institute. The physical examination was arranged and paid for by George A. Fuller Company and was a condition of plaintiff's entering into an employment contract with defendant. While plaintiff was in New York, he signed the employment contract which is the subject of this action. Defendant's answers to plaintiff's interrogatories indicate that this was the only time in 1978 that defendant's agent recruited in North Carolina and that on this trip twenty-two people were interviewed and eight were favorably considered for employment. Defendant states that the records of George A. Fuller Company do not indicate how many of these eight applicants actually signed employment contracts. The affidavit of the George A. Fuller Company employee who actually conducted the interviews indicated he interviewed "approximately 15 people in Charlotte" and approved "at least five applicants."

On at least one prior occasion defendant had come to North Carolina through its agent, George A. Fuller Company, to advertise and recruit North Carolina residents to sign contracts to work in Saudi Arabia. The affidavit of a second George A. Fuller Company employee indicates that in 1975 he conducted a recruiting excursion into North Carolina much like the 1978 excursion to which plaintiff responded. This employee states in his affidavit that the decision to employ an applicant was made immediately after the interview was completed and that "the rest was merely form." That decision was made in Charlotte, North Carolina. The formal offers were delivered by defendant to successful applicants at their North Carolina homes though each was subsequently transported by defendant to New York for the formal signing of the employment contract. The 1975 excursion into North Carolina resulted in interviews with approximately 40 North Carolina residents and contracts with approximately 18.

The defendant appeals from the order denying its motion to

dismiss for lack of *in personam* jurisdiction.

*Perry, Patrick, Farmer & Michaux by Roy H. Michaux, Jr. for defendant appellant.*

*Ronald Williams for plaintiff appellee.*

CLARK, Judge.

The sole issue before this Court is whether the courts of this State may properly exercise jurisdiction over the defendant. Two considerations determine whether a state court's exercise of *in personam* jurisdiction over a foreign defendant is proper: (1) whether the legislature has granted to the courts the statutory authority to exercise its jurisdiction over the defendant under the circumstances, and (2) whether under the facts and circumstances of the case the exercise of jurisdiction comports with the due process limitations imposed on the states by the Fourteenth Amendment. *Dillon v. Funding Corp.,* 291 N.C. 674, 231 S.E. 2d 629 (1977).

The first of these considerations is easily met. G.S. 1-75.4 (1) (d) grants jurisdiction over any defendant who, at the time of service of process upon him, "[i]s engaged in substantial activity within this State . . . ." G.S. 55-145 (a) (2) grants jurisdiction over foreign corporations not transacting business in this State on any cause of action arising "[o]ut of any business solicited in this State . . . if the corporation has repeatedly so solicited business . . . ."

Rather than argue the applicability of these statutes, defendant concedes that these statutes

"reflect a legislative intent to extend jurisdiction of the North Carolina courts to the fullest extent permissible under the due process clause of the United States Constitution, *Pope v. Pope,* 38 N.C. App. 328, 248 S.E. 2d 260 (1978); *Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 231 S.E. 2d 629 (1977). Therefore, the North Carolina courts have greatly simplified the first step in the test by interpreting section 1-75.4 (1) (d) to apply to *any* defendant who meets the 'minimum contacts' requirement of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), which is the yard stick used by the courts in determining step two of the test - the constitutionality of the statute as applied. *Fieldcrest Mills, Inc. v. Mohasco Corpora-*

*tion,* 442 F. Supp. 424 (D.C. N.C. 1977)."

We agree with defendant that the intent of the legislature was to assert personal jurisdiction to the fullest extent allowed by due process. *See Stephenson v. Jordan Volkswagen, Inc.,* 428 F. Supp. 195 (W.D. N.C. 1977); *Sparrow v. Goodman,* 376 F. Supp. 1268 (W.D. N.C. 1974); *Forman & Zuckerman v. Schupak,* 31 N.C. App. 62, 228 S.E. 2d 503 (1976), *appeal dismissed,* 434 U.S. 804, 54 L. Ed. 2d 61, 98 S. Ct. 32 (1977); *Bank v. Funding Corp.,* 30 N.C. App. 172, 226 S.E. 2d 527 (1976); *Trust Co. v. McDaniel,* 18 N.C. App. 644, 197 S.E. 2d 556 (1973). The only meaningful consideration, then, is whether the acts of defendant in North Carolina constituted sufficient minimum contacts with the State to subject it to the *in personam* jurisdiction of our courts.

In this second consideration, we must be guided by a trilogy of cases in which the United States Supreme Court has defined the due process limitations on the States' exercise of *in personam* jurisdiction. In *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945), the high court laid down the rule that before a state court may subject a non-resident defendant to a judgment *in personam,* "certain minimum contacts" with the forum state must be established in order that maintenance of the suit not "offend traditional notions of fair play and substantial justice." In *McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957), the Court upheld California's exercise of *in personam* jurisdiction over a foreign insurance company, finding minimum contacts on the basis of a single contract of insurance which was delivered to insured in California, it appearing that insured mailed premiums to defendant from California and that insured was a California resident when he died. This very liberal recognition of extended personal jurisdiction was limited the following year by the U. S. Supreme Court's holding in *Hanson v. Denckla,* 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228, *reh. denied,* 358 U.S. 858, 3 L. Ed. 2d 92, 79 S. Ct. 10 (1958), in which the Court explained that the minimum contacts must properly be contacts brought about by the defendant:

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

*Id.* at 253-54, 2 L. Ed. 2d at 1298, 78 S. Ct. at 1239-40.

Our own Supreme Court in recognizing and following the rules of the above three cases has stated:

> "Whether the type of activity conducted within the State is adequate to satisfy the requirements depends upon the facts of the particular case. (Citations omitted.) It seems, according to the most recent decisions of the United States Supreme Court, that the question cannot be answered by applying a mechanical formula or rule of thumb, but by ascertaining what is fair and reasonable and just in the circumstances. . . ."

*Farmer v. Ferris,* 260 N.C. 619, 625, 133 S.E. 2d 492, 497 (1963), *quoted in Dillon v. Numismatic Funding Corp.,* 291 N.C. at 679, 231 S.E. 2d at 632.

In the instant case, plaintiff is a resident of North Carolina, requiring less extensive contacts than would be necessary if plaintiff were a stranger to the forum state, *Lee v. Walworth Valve Co.,* 482 F. 2d 297 (4th Cir. 1973); and there is no hint of forum shopping, *Dillon v. Numismatic Funding Corp.,* 291 N.C. at 679, 231 S.E. 2d at 632. We note too that "[w]hen claims are . . . moderate, individual claimants frequently cannot afford the cost of bringing an action in a foreign forum"; thus by denying plaintiff access to our courts, we might well be placing defendant beyond the reach of the plaintiff. *Byham v. National Cibo House,* 265 N.C. 50, 57, 143 S.E. 2d 225, 231-32, 23 A.L.R. 3d 537, 546 (1965).

We hold that in this case, there were sufficient contacts between the defendant and the State of North Carolina, all of which were initiated by the defendant through its agent, to satisfy the traditional due process requirements of fair play and substantial justice. Our holding is based on the following circumstances:

1) Defendant's agent at least twice solicited applications for employment by advertising in a newspaper of wide circulation in this State.

2) Defendant's agent's employees on two different occasions came into the State to conduct their recruitments, at which time they availed themselves of the use of state roads and/or air facilities owned and operated by the State or municipalities therein.

3) On both trips into the State, defendant's agent's employees rented and occupied rooms in hotels licensed by and regulated by the State.

4) Defendant's agents carried on long distance telephone conversations with an indeterminate number of residents.

5) Defendant's agents met with and interviewed as many as 62 North Carolina residents while in Charlotte.

6) Defendant's agents apparently sent through the mails approximately 28 letters containing "conditional offers of employment" which North Carolina residents received at their homes. (This was definitly the procedure followed for the 20 of the 28 who were offered employment in 1975; the employee who conducted the 1978 interviews indicates in his affidavit that a "conditional offer" was made to eight residents by telephone. We note, however, that the record contains a letter signed by this employee which was sent to plaintiff at his home in Concord.)

7) Defendant's agents employed at least 19 of these 28 North Carolina residents.

8) Those residents employed were flown from North Carolina to New York at the employer's expense to sign employment contracts before leaving for Saudi Arabia.

We find persuasive the fact that the contract upon which this action for breach is based, while not finally consummated in this State, arose out of solicitations and was substantially negotiated here. "[S]o far as . . . obligations arise out of or are connected with the activities [of a foreign corporation] within the [forum] state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." *International Shoe Co. v. Washington,* 326 U.S. at 319, 90 L. Ed. at 104, 66 S. Ct. at 160, 161 A.L.R. at 1063.

The order of 7 February 1980 is

Affirmed.

Judges HEDRICK and WHICHARD concur.