FIREMAN'S FUND INSURANCE COMPANY v. JOHNNY WASHINGTON, SR., AS ANCILLARY ADMINISTRATOR OF THE ESTATE OF CEDRIC WASHINGTON, DECEASED; JOHNNY WASHINGTON, SR., INDIVIDUALLY; WYLEAN WASHINGTON, INDIVIDUALLY; JOHNNY WASHINGTON, JR., INDIVIDUALLY; SHANNON WASHINGTON AND TRACY WASHINGTON, MINORS, THROUGH THEIR GUARDIAN AD LITEM, JOHNNY WASHINGTON, SR.; JOHNNY WASHINGTON, SR., AS TRUSTEE FOR HIMSELF, WYLEAN WASHINGTON, JOHNNY WASHINGTON, JR., SHANNON WASHINGTON, TRACY WASHINGTON, AND THE ESTATE OF CEDRIC WASHINGTON; ANDERSON MOTOR LINES, INC.; INSURANCE COMPANY OF NORTH AMERICA; ROBERT J. O'LEARY; AND FLEMING'S EXPRESS, INC.

No. 8210SC857

(Filed 15 November 1983)

**Constitutional Law § 24.7; Process § 9.1— personal jurisdiction over nonresident defendants—statutory basis—due process**

In a declaratory judgment action to determine whether the insurer for a tractor-trailer owner or the insurer for its lessee had primary coverage for an accident involving the nonresident individual defendants, the courts of this state had jurisdiction over the nonresident defendants pursuant to G.S. 1-75.4(1)(d), and the assertion of personal jurisdiction over the nonresident defendants did not violate due process, where the accident occurred in this state; the nonresident defendants employed counsel in this state to investigate their rights and to take legal steps to enforce them; the head of defendants' family qualified in this state as ancillary administrator for the estate of his deceased son and as guardian ad litem for the injured minor children; and the nonresident defendants filed an action in this state to recover for their injuries and damages suffered in the accident and appointed a local attorney as their process agent.

APPEAL by defendant Washingtons from *Godwin, Judge.* Order entered 20 April 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 7 June 1983.

On July 16, 1978, six members of the Washington family, while on their way home to Florida, were severely injured in Wilson, North Carolina when their car was rear-ended by a tractor-trailer. The child, Cedric Washington, died from his injuries. The tractor-trailer, owned by Fleming's Express, Inc., a Pennsylvania corporation, and operated by their employee, Robert J. O'Leary, was under lease to Anderson Motor Lines, Inc., a Massachusetts corporation, whose liability insurer was Insurance Company of North America (INA). The tractor-trailer was covered by a liability insurance policy issued by Fireman's Fund Insurance Company to Fleming's; and in the lease agreement Fleming's agreed to indemnify Anderson against loss or damage resulting from the negligence, incompetence, or dishonesty of the driver, O'Leary.

Before this declaratory judgment action was brought in May, 1981 to determine which of the two insurance companies had primary coverage of the accident involved and thus the duty to defend the lawsuits filed because of it, three related suits had been filed and taken course as follows:

In March, 1979, in Broward County, Florida, the Washingtons sued Anderson, Anderson's insurer, INA, Fleming's, O'Leary, and Fleming's insurer, Fireman's Fund. The case was dismissed as to Fireman's Fund, Fleming's and O'Leary, pursuant to their motion, for lack of personal jurisdiction. On April 3, 1980, Anderson, stipulating liability, agreed to pay the Washingtons $185,000 of the final verdict obtained by them and assigned to them all its rights under the lease agreement and Fireman's Fund's liability insurance policy; in exchange therefor the Washingtons released Anderson and INA from any further liability. On April 8, 1980, a non-jury hearing was held to adjudicate the Washingtons' rights as against Anderson and INA. No live testimony was presented and the evidence consisted of photographs, the medical bills, and affidavits from several Florida lawyers as to the value of each claim, and neither Anderson nor INA offered any evidence. The judge rendered verdict and judgment in favor of the Washingtons in the aggregate amount of $1,838,867. According to Fireman's Fund, Fleming's and O'Leary, they did not learn of the settlement or trial until sometime after the judgment was rendered.

In May, 1980, in Broward County, Florida, the Washingtons sued Fireman's Fund for breach of their contract to defend and

insure Anderson against liability because of the trip, lease, and accident involved. Fireman's Fund's answer denied that Anderson was covered under Fleming's policy and alleged that even if Anderson was covered, INA, the primary insurer, had the duty to defend Anderson in a non-negligent, good faith manner, and failed to do so. This case is still pending.

In July, 1980, in Wake County, North Carolina, the Washingtons sued Fleming's and O'Leary for negligently causing their injuries in the North Carolina accident; included in the suit was a second count against Fleming's based on their agreement to indemnify Anderson and Anderson's assignment of its rights to the Washingtons under the Florida judgment. The defendants joined Anderson and INA as third party defendants, alleging that the truck was under the exclusive direction and control of Anderson at the time of the accident, that INA's coverage was primary, and that it failed to properly represent Anderson, resulting in an excess verdict for the Washingtons. This case is still pending.

When this declaratory judgment action to resolve the coverage disputes between the two insurance companies and their insureds was brought, the other defendants were joined as parties because of their interest in the insurance issue. The Washington defendants, all of whom are Florida residents, moved to dismiss, alleging lack of jurisdiction over their persons. The trial judge denied the motion and the movants appealed.

*Smith Moore Smith Schell & Hunter, by Stephen P. Millikan, Pamela DeAngelis, and Jeri L. Whitfield, for plaintiff appellee.*

*Bailey, Dixon, Wooten, McDonald & Fountain, by Gary S. Parsons, for defendant appellants, the Washingtons.*

PHILLIPS, Judge.

Though the order appealed from is interlocutory, the matter is here properly, since G.S. 1-277(b) gives "the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant. . . ." In deciding the appeal, since the Washingtons reside in another state and the court is attempting to exercise *in personam* jurisdiction over them, we must first determine whether any North Carolina stat-

ute authorizes the exercise of such jurisdiction over them under the circumstances involved; and, if so, whether haling them into court here violates due process of law under the Constitution of the United States. *Fiber Industries, Inc. v. Coronet Industries, Inc.*, 59 N.C. App. 677, 298 S.E. 2d 76 (1982). For a comprehensive discussion of the necessity for making these two determinations in cases like this, *see Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E. 2d 629 (1977).

In this instance statutory authority adequate to the purpose certainly exists. G.S. 1-75.4(1)(d) states:

> § 1-75.4.  Personal jurisdiction, grounds for generally.
>
> A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) of the Rules of Civil Procedure under any of the following circumstances:
>
> (1) Local Presence or Status.—In any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party:
>
> . . . .
>
> d. Is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise.

That this statute is far-reaching enough in this instance to embrace the Washingtons, who at this time are in our courts prosecuting a lawsuit, a very substantial activity, indeed, is self-evident. The statute has been interpreted to authorize jurisdiction to the fullest extent permitted under the due process clause of the United States Constitution. *Mabry v. Fuller-Shuwayer Co.*, 50 N.C. App. 245, 273 S.E. 2d 509, *disc. rev. denied*, 302 N.C. 398, 279 S.E. 2d 352 (1981). Thus, only the due process determination remains.

In determining how far the statute can be applied *constitutionally*, we must look to the "minimum contacts" doctrine laid down by the Supreme Court of the United States. In *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945), it was ruled that in the absence of certain minimum

contacts with the forum state that subjecting a non-resident defendant to *in personam* jurisdiction offended the due process concept of fair play and substantial justice. In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 2 L.Ed. 2d 223, 78 S.Ct. 199 (1957), where personal jurisdiction over a foreign insurance company was upheld on the basis of the single policy sued on, the Court in deciding the due process question apparently considered the plaintiff's status and activities — a forum state resident, who mailed the premiums from there — as well as those of the defendant. In a subsequent case, however, the Court made plain that the minimum contacts required are those brought about by the defendant non-resident, and that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L.Ed. 2d 1283, 1298, 78 S.Ct. 1228, 1240 (1958). In applying these principles to this case, however, no rule of thumb exists to guide us. Thus, in the final analysis, whether the non-resident defendants have subjected themselves to the jurisdiction of our court depends not upon a formula of some kind, but upon what is fair and reasonable — and what is fair and reasonable, of course, depends upon the circumstances of their case. *Farmer v. Ferris*, 260 N.C. 619, 133 S.E. 2d 492 (1963). Under the circumstances recorded here we are of the opinion that certain of their activities in this state did subject the non-resident defendants to the jurisdiction of our courts and that exerting that jurisdiction is in keeping with due process of law concepts of fairness and reasonableness.

Though the contacts that the non-resident defendants have had with this state make a rather long list, some of them by themselves would have little or no effect on the determination of this appeal. That through no fault of their own, while traveling through our state, they had the misfortune to be injured or killed, thereby making it necessary to obtain medical and hospital care here, is no basis for subjecting them to *in personam* jurisdiction with respect to the coverage conditions of appellee's insurance policy, as the appellee contends. Basing personal jurisdiction in a case like this upon such involuntary and imposed activities as that would, we think, clearly violate due process. But the voluntary, purposeful steps that the Washingtons took following the

tragic accident changed the picture. By employing counsel here to investigate their rights and to take legal steps to enforce them; by the family head qualifying in our court as ancillary administrator for the estate of his deceased son and as guardian ad litem for the injured minor children; by all of them filing suit for their injuries and damages in our court and appointing another local lawyer as their process agent; and by cooperating with their lawyer here ever since in preparing their case for trial, they have purposefully availed themselves of the benefits and protection of our laws and cannot validly object to being haled into court here in connection therewith.

In contending that their activities in this state were insufficient to subject them to the court's jurisdiction, the defendant appellants mainly rely on three cases in each of which it was held that the non-resident defendant had not subjected itself or himself to *in personam* jurisdiction in North Carolina by participating in certain litigation in this state. Neither of these cases, however, involved circumstances at all similar to those recorded here. In *Munchak Corporation v. Riko Enterprises, Inc.*, 368 F. Supp. 1366 (M.D.N.C. 1973), the lawsuit that the non-resident defendant participated in was over and it participated not as a plaintiff voluntarily seeking legal relief in this state, but as a behind the scenes supporter of a *defendant*, who was in court here against his will. In *Georgia Railroad Bank & Trust Co. v. Eways*, 46 N.C. App. 466, 265 S.E. 2d 637 (1980), a suit to enforce a loan guaranty made in South Carolina, the lawsuit that the Pennsylvania defendant participated in as a plaintiff was also over and it involved a tract of land owned by defendant, which property had no relation at all to plaintiff's suit. Finally, *Winder v. Penniman*, 181 N.C. 7, 105 S.E. 884 (1921) stands only for the ancient, universally recognized, but irrelevant proposition that a non-resident who is in the state for the sole purpose of testifying as a party or witness in a lawsuit cannot be served with process while here.

In contrast, the Washingtons' lawsuit here is still in progress and it relates directly to the subject matter of this case. If their suit is won collection cannot be accomplished until the coverage, defense and liability issues raised by the appellee in this case are resolved. Requiring those issues to be litigated here will not be unfair to the Washingtons, who could have anticipated as much

when they sued appellee's insured here under all theories available to them.

Affirmed.

Judges HEDRICK and WELLS concur.