Esoterix Genetic Labs., LLC v. McKey, 2011 NCBC 32.

STATE OF NORTH CAROLINA ) IN THE GENERAL COURT OF JUSTICE
                                           ) SUPERIOR COURT DIVISION
COUNTY OF ALAMANCE ) 11 CVS 1379
                                           )
ESOTERIX GENETIC )
LABORATORIES, LLC, )
                                           )
           Plaintiff, )
                                           )
    v. )
                                           )         **ORDER**
BETH MCKEY, KYLE )
MECKLENBURG and COUNSYL, )
INC., )
                                           )
          Defendants. )
                                           )

{1} This matter is before the Court on Defendant Counsyl Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(2) ("Motion"). The Motion is DENIED, as the Court finds that Plaintiff has not proven personal jurisdiction based on specific jurisdiction but has proven personal jurisdiction based on general jurisdiction.

> *Kelley Drye & Warren LLP, by Robert Steiner,* pro hac vice*, and K&L Gates LLP, by Amie Flowers Carmack and Douglas W. Britt for Plaintiff Esoterix Genetic Laboratories, LLC.*
>
> *Womble Carlyle Sandridge & Rice, PLLC, by M. Todd Sullivan for Defendants Beth McKey, Kyle Mecklenburg, and Counsyl, Inc.*

Gale, Judge.

## I. PROCEDURAL BACKGROUND

{2} Plaintiff Esoterix Genetic Laboratories, LLC ("Esoterix"), a Delaware company having its principal place of business in Alamance County, North Carolina, filed its Complaint on May 24, 2011 against its former employees Beth McKey ("McKey"), a resident of the State of Washington, and Kyle Mecklenburg

("Mecklenburg"), a resident of the State of Oklahoma, as well as their new employer Counsyl, Inc. ("Counsyl"), a Delaware company having its principal place of business in California. The action is based on contracts McKey and Mecklenburg entered in connection with their employment with Esoterix, Counsyl's alleged tortious interference with those contracts, and alleged misappropriation of trade secrets.

{3} Presiding Superior Court Judge W. Osmond Smith, III entered a Temporary Restraining Order ("TRO") against all Defendants by a May 25, 2011 order, which set a preliminary injunction hearing for June 6, 2011 and allowed expedited discovery pursuant to parameters to be negotiated by counsel. Judge Smith, on his own motion, issued a further order on May 27, 2011 dissolving the TRO against Counsyl. The parties executed a consent order extending the TRO until a preliminary injunction hearing to be held on June 16, 2011. Esoterix filed an Amended Complaint on June 15, 2011. On that same day, the parties consented to a further extension of the TRO. On June 22, 2011, Defendants timely designated the matter as a complex business case pursuant to N.C. Gen. Stat. §7A-45(4) based on the trade secret claims added by the Amended Complaint. By consent order of July 13, 2011, the TRO was extended, and the Court set a July 21, 2011 hearing date for the Rule 12(b)(2) motion Counsyl indicated it would file, to be followed by an August 11, 2011 hearing on Plaintiff's motion for preliminary injunction. The TRO has again been extended by consent until a hearing on the motion for preliminary injunction is set.

{4} Counsyl filed its Motion on July 18, 2011, and the parties filed briefs in support and opposition on an expedited basis. The Court heard oral argument on July 21, 2011, but withheld its ruling pending further jurisdictional discovery and the submission of proposed findings, which have now been submitted. Individual Defendants McKey and Mecklenburg do not challenge personal jurisdiction as to claims against them. Counsyl's Motion is now ripe for ruling.

## II. FACTS

{5} The parties conducted discovery and have submitted evidence regarding personal jurisdiction in the form of deposition testimony, affidavits, and documents. On this Motion, the Court sits as a fact finder, and the burden is upon Plaintiff to show jurisdiction by a preponderance of the evidence. *Deer Corp. v. Carter*, 177 N.C. App. 314, 322, 629 S.E.2d 159, 166 (2006). The Court's fact findings are, however, made for the purposes of the present Motion and do not foreclose further consideration of the evidence on the underlying substantive claims.

{6} Esoterix is a wholly-owned subsidiary of Laboratory Corporation of America Holdings ("LabCorp"), a corporation organized under the laws of the State of Delaware, with its principal place of business in Burlington, Alamance County, North Carolina. Esoterix provides medical laboratory tests and services which it markets and sells to medical professionals and others through a network of sales professionals. LabCorp created Esoterix following its acquisition of Genzyme Corporation ("Genzyme"). (Aff. of Todd Wauters, Esoterix's Vice President of National Sales for the Reproductive Genetics Division ("Wauters Aff.") ¶¶ 3–4.)[1]

{7} McKey was employed by Esoterix as a Territory Manager for a region in the Western United States. (Wauters Aff. ¶ 16.)

{8} Mecklenburg was employed by Esoterix as a Territory Manager for a region in the Midwestern United States. (Wauters Aff. ¶ 15.)

{9} Counsyl is a corporation organized under the laws of the State of Delaware with its principal place of business in California. (Aff. of Ramji Srinivasan ¶¶ 3–5.)

{10} Both Esoterix and Counsyl conduct business in the field of genetic testing. The parties dispute whether their tests are different and whether they are

---

[1] The Complaint and Amended Complaint were not verified, but most factual assertions in those pleadings are supported by the affidavit of Todd Wauters. Mr. Wauters' affidavit attached a copy of the Confidentiality Agreements Defendants McKey and Mecklenburg executed in connection with their employment with Esoterix.

competitive. The Court need not resolve that dispute in order to rule upon the present Motion.

{11} McKey and Mecklenburg each signed agreements which contain several covenants, including Noncompetition, Non-Solicitation of Customers, and Non-Solicitation of Company Employees. (Wauters Aff., Exs. A, B ("Confidentiality Agreements").)

{12} Esoterix further alleges that McKey and Mecklenburg received information during the course of their employment that constitutes protected trade secrets and that such trade secrets have been misappropriated. (*See* Amended Compl. ¶ 36; Wauters Aff. ¶ 37.)

{13} The Confidentiality Agreements McKey and Mecklenburg signed with Esoterix include at Paragraph 7(g) a consent to personal jurisdiction in North Carolina and a waiver of jurisdictional or venue defenses. (Confidentiality Agreements.)

{14} Esoterix asserts specific jurisdiction upon allegations that Counsyl was aware of the Confidentiality Agreements and knew that its employing McKey and Mecklenburg would constitute breaches of their Confidentiality Agreements.

{15} Esoterix asserts general jurisdiction based on its further claims that Counsyl has undertaken actions directed at the State of North Carolina.

{16} The parties dispute whether Counsyl was aware of the Confidentiality Agreements before hiring McKey and Mecklenburg. Mecklenburg and McKey testified that they provided Counsyl a copy of their Confidentiality Agreements before being hired and obtained indemnity from Counsyl as a part of their employment terms. (Dep. of Kyle Mecklenburg ("Mecklenburg Dep.") 32:20–34:1, 191:10–192:20, 193:10–14; Dep. of Beth McKey ("McKey Dep.") [Rough] 117:3–12, 118:4–119:17, 126:23–128:14.) Counsyl's CEO, testifying for Counsyl pursuant to Rule 30(b)(6), indicated that he did not recall whether he was aware of the Confidentiality Agreements before Mecklenburg was hired. (Rule 30(b)(6) Dep. of Ramji Srinvasan ("Counsyl Dep.") 136:6–13.)

{17} Esoterix sent letters to McKey and Mecklenburg on May 9, 2011 following the termination of their employment with Esoterix, reminding them of their obligations under their Confidentiality Agreements. (Wauters Aff. ¶ 30, Exs. E, F.)

{18} On May 17, 2011, Counsyl's attorney replied on behalf of McKey and Mecklenburg denying that their new employment with Counsyl breached their Confidentiality Agreements. (Wauters Aff. ¶ 31, Ex. G.) Counsyl's lawyer further noted a disagreement with opposing counsel regarding the enforceability of the Confidentiality Agreements. (Aff. of Robert Steiner in Opp'n to Jurisdiction ("Opp'n Aff."), Ex. 5.)

{19} McKey testified that she solicited customers in her former territory on May, 16 2011, and sent e-mails to Esoterix customers for which she was responsible while employed by Esoterix. (McKey Dep. [Rough] 153:18–154:25, 155:13–157:10.)

{20} Esoterix offered evidence regarding Counsyl's connections with the State of North Carolina other than its hiring of McKey and Mecklenberg.

{21} While Counsyl was incorporated approximately four (4) years ago, it has only had active operations for the sale of products for approximately two (2) years. Counsyl's contacts with North Carolina began in October 2010. (Counsyl Dep. 15:21–16:1, 21:22–25:4.)

{22} Counsyl representatives have visited North Carolina a total of five (5) times for purposes of conducting business through which Counsyl can sell its tests in North Carolina. (Counsyl Dep. 15:21–16:1, 21:22–25:4.) Counsyl has had multiple communications with prospective accounts in North Carolina and began delivering products and services in North Carolina in October 2010. (Counsyl Dep. 14:9–13, 15:21–16:1, 21:22–25:4, 16:20–17:8, 54:25–55:7; Opp'n Aff., Exs. 7, 8; Dep. of Leslie Evans ("Evans Dep.") [Rough] 25:8–14.)

{23} In October 2010, Counsyl began an on-going business relationship with one North Carolina physician practice. (Opp'n Aff., Ex. 7; Counsyl Dep. 14:9–13, 54:25–55:7; Evans Dep. [Rough] 25:8–14.) The physician practice group directs patients to Counsyl for delivery of services that resulted in forty-one (41) separate

sales of its tests in North Carolina between October 2010 and June 30, 2011. (Counsyl Dep. 21:19–22:12; Opp'n Aff., Ex. 7.) In January 2010, Counsyl sold four (4) tests; in February 2010, it sold ten (10) tests; in March 2010, it sold three (3) tests; in April 2010, it sold eight (8) tests; in May 2010, it sold eight (8) tests; and in June 2010, it sold six (6) tests to North Carolina customers. (Opp'n Aff., Ex. 7.) The practice remains a current client. While the practice is invoiced for the tests, the individual patients are actually Counsyl's customers.

{24} Sales to this practice group have generated approximately $16,600 from October 2010 through June 30, 2011. (Opp'n Aff., Ex. 7.) While the test results are returned to North Carolina patients, the test samples are sent to California, and the actual testing of the samples is conducted in California. (Evans Dep. [Rough] 59:16–17.)

{25} Beginning in October 2010, three (3) Counsyl representatives, Gabriel Lazarin, Leslie Evans, and Ramji Srinivasen, visited North Carolina clinics in Raleigh, Durham, and Charlotte. (Counsyl Dep. 14:9–16:1, 21:22–22:21, 100:6–25.)

{26} On three (3) occasions in the last year, Counsyl employees sent e-mails to North Carolina businesses after having met representatives of those businesses outside the state. (Counsyl Dep. 88:4–89:23, 96:3–24, 98:21–102:24, 116:19–119:8; Opp'n Aff., Ex. 8 at 9 [Nov. 15, 2010 e-mail], 10 [Nov. 9, 2010 e-mail], 15–16 [Nov. 10, 2010 e-mail].) When Counsyl receives an inquiry through its website concerning services, it directs the inquiry to a sales representative covering that area of the country. (Counsyl Dep. 14:14–15:11, 48:13–51:2; Evans Dep. [Rough] 6:13–7:3.) In a few instances, the follow-up to inquiries led to personal visits in North Carolina. (Counsyl Dep. 15:21–23, 21:22–22:18; Evans Dep. [Rough] 11:21–13:22; Dep. of John Marshall ("Marshall Dep.") [Rough] 6:6–21.) Counsyl's webpage includes a notation that it has sold tests in North Carolina.

{27} Also, beginning in October 2010, Counsyl sales representatives informed prospective customers in North Carolina of Counsyl's test and attempted to solicit business either in-person or by mail to vendors, including, but not limited to: Carolina Conceptions; North Carolina Center for Reproductive Medicine; University

of North Carolina Greensboro; Carolinas Medical Center: Genetics; Duke University Maternal Fetal Medicine; Presbyterian Maternal Fetal Medicine Associates; and Reach Infertility.  (Opp. Aff. Ex. 8.)

{28}  One of Counsyl's visits to North Carolina was in November 2010 by Dr. John Marshall, Director of Medical Affairs for Counsyl, and Gabriel Lazarin, a sales representative who met with physicians and providers in North Carolina.  (Counsyl Dep. 22:24–23:15; Marshall Dep. [Rough] 6:6–7:1.)  During the November 2010 visit, Dr. Marshall and Lazarin attended a dinner in Raleigh with other prospective Counsyl customers present, co-hosted by a North Carolina physician group.  (Opp'n Aff., Ex. 8 at 16 [Nov. 12, 2010 e-mail], 17 [Apr. 15, 2010 e-mail]; Counsyl Dep. 105:16–18, 128:8–131:13; Marshall Dep. [Rough] 35:24–36:6, 36:21–37:17.)  Dr. Marshall and Lazarin did not discuss Counsyl's tests during the dinner, but did conduct a thirty-minute meeting with two genetic counselors prior to dinner to discuss the test.  (Marshall Dep. [Rough] 38:10–39:20.)

{29}  Counsyl employee Lisa Evans, at least for a time, covered North Carolina as part of her eleven (11) state sales territory for Counsyl and was available to travel to North Carolina to meet customers.  (Counsyl Dep. 11:3–15, 15:1–15; Evans Dep. [Rough] 10:14–11:11.)  Lisa Evans began working for Counsyl in January 2011, and she is responsible for communications in the Southeast, including North Carolina, and providing educational materials to physicians to solicit prospective customers.  (Counsyl Dep. 11:16–25, 20:14-18, 29:12–30:2; Opp'n Aff., Ex. 8; Evans Dep. [Rough] 11:21–13:22, 18:9–13.)  Ms. Evans visited North Carolina once in May 2011 to solicit business for Counsyl at the invitation of a prospective customer.  (Counsyl Dep. 10:10–15; Evans Dep. [Rough] 11:21–13:22.)  At present, Ms. Evans has been instructed to concentrate on states other than North Carolina, and particularly Florida, where Counsyl may anticipate a greater potential patient population.

{30}  Counsyl has e-mailed information regarding Counsyl's test to at least seven prospective North Carolina accounts after receiving inquiries.  (Opp'n Aff., Exs. 8, 9.)  The inquiries came from in-person contacts made outside of North

Carolina, and phone calls or e-mail inquiries by prospective customers from North Carolina to Counsyl. (Counsyl Dep. 14:17–23, 99:18–100:15.) Several Counsyl employees sent and received approximately fifty (50) e-mails to clinics within North Carolina in the last year. (Opp'n Aff., Exs. 8, 9.) Counsyl indicates that this constitutes a small percentage of its overall customer or contact e-mails.

{31} On two occasions, Counsyl's CEO Srinivasan traveled to North Carolina at LabCorp's request to discuss a possible distribution deal. (Counsyl Dep. 23:22–26:23.)

{32} Counsyl has incorporated a non-profit entity in North Carolina to provide access to testing for minorities and people of limited means.[2] (Opp'n Aff., Ex. 14; Counsyl Dep. 131:14–25.)

## III.  LEGAL PRINCIPLES

{33} Having been permitted to conduct expedited jurisdiction discovery in aid of its jurisdictional arguments, Esoterix must prove by a preponderance of the evidence that the Court may exercise personal jurisdiction over Counsyl. *Deer Corp.*, 177 N.C. App. at 322, 629 S.E.2d at 166.

{34} "A two-step analysis applies in determining whether a North Carolina court has personal jurisdiction over a nonresident defendant: 'First, the transaction must fall within the language of the State's "long-arm" statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution.'" *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005) (quoting *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 785 (1986)). In North Carolina the long-arm statute is "to be liberally construed in favor of finding personal jurisdiction, subject only to due process considerations." *Dataflow Cos. v. Hutto*, 114 N.C. App. 209, 212, 441 S.E.2d 580, 582 (1994).

---

[2] Counsyl has indicated that it has established a non-profit entity in all fifty (50) states for the purpose of providing testing services for the impoverished at no cost, but no evidentiary support for that statement has been submitted to date.

{35} North Carolina's long-arm statute has been construed to extend jurisdiction to the full extent permitted by due process, and, therefore, the analysis collapses "into a single inquiry as to whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Christian Sci. Bd. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citation omitted); *see also Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 617, 532 S.E.2d 215, 218–19 (2000).

{36} Counsyl agrees that the Court has a statutory basis for the exercise of long-arm jurisdiction over Counsyl pursuant to N.C. Gen. Stat. § 1-75.4(4)(a). It contends, however, that the exercise of that authority would not comport with due process. (Mem. of Law in Supp. of Counsyl, Inc.'s Mot. to Dismiss Pursuant to Rule 12(b)(2) ¶ 1.) That statutory section allows personal jurisdiction over a nonresident defendant if (1) the action involves injury to a North Carolina person or property; (2) the injury arose from the defendant's activities outside the state; and (3) the defendant was engaging in solicitation or services within North Carolina at or about the time of the injury. *Carson v. Brodin*, 160 N.C. App. 366, 370, 585 S.E.2d 491, 495 (2003).

{37} The critical inquiry is then whether the exercise of personal jurisdiction based on this statutory authority satisfies the requirements of due process. "To satisfy the requirements of the due process clause, there must exist 'certain minimum contacts between the nonresident defendant and the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Banc. of Am. Sec. LLC*, 169 N.C. App. at 695, 611 S.E.2d at 184 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). As the North Carolina Supreme Court has stated, "[i]n each case, there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Tom Togs, Inc.*, 318 N.C. at 365, 348 S.E.2d at 786. The relationship between the defendant and the forum must be "such that he should reasonably anticipate being haled into court there." *Id.*

{38} There are several factors which North Carolina courts utilize to determine the existence of adequate minimum contacts: (1) the quantity of the contacts between defendant and the forum state; (2) the quality and nature of the contacts; (3) the source and connection of the cause of action to the contacts; (4) the interest of the forum state; and (5) the convenience of the parties. *Cameron-Brown Co. v. Daves*, 83 N.C. App. 281, 284, 350 S.E.2d 111, 114 (1986). Additional factors the Court may look to include "the location of critical witnesses and material evidence, and the existence of a contract which has a substantial connection with the forum state." *Id.* "No single factor controls; rather, all factors must be weighed in light of fundamental fairness and the circumstances of the case." *Corbin Russwin, Inc. v. Alexander's Hardware, Inc.*, 147 N.C. App. 722, 725, 556 S.E.2d 592, 595 (2001).

{39} The extent of a defendant's contacts with the State "must be determined 'by a careful scrutiny of the particular facts of each case.'" *Cameron-Brown Co.*, 83 N.C. App. at 284, 350 S.E.2d at 114 (internal citation omitted). The presence of sufficient contacts is determined "not by using a mechanical formula or rule of thumb, but by ascertaining what is fair and reasonable under the circumstances." *Rossetto USA, Inc. v. Greensky Financial, LLC*, 191 N.C. App. 196, 200, 662 S.E.2d 909, 913 (2008) (citation omitted). For example, a single contract between a North Carolina resident and an out-of-state party does not automatically establish sufficient minimum contacts, but it may be an adequate basis for the exercise of personal jurisdiction if it has a substantial connection with the State. *Tom Togs, Inc.*, 318 N.C. at 367, 348 S.E.2d at 786. To determine whether adequate minimum contacts exist between a defendant and North Carolina individual, consideration of the specific facts of the case is necessary. *Lulla v. Effective Minds, LLC*, 184 N.C. App. 274, 278, 646 S.E.2d 129, 133 (2007) (citing *First Union Nat'l Bank of Del. v. Bankers Wholesale Mortgage, LLC*, 153 N.C. App. 248, 253, 570 S.E.2d 217, 221 (2002)).

{40} If the plaintiff is a resident of the forum state, less extensive contacts are necessary. *Bruggeman*, 138 N.C. App. 612 at 618, 532 S.E.2d 215 at 219 (citing *Mabry v. Fuller-Shuwayer Co.*, 50 N.C. App. 245, 250, 273 S.E.2d 509, 512 (1981)).

{41} Like other states, North Carolina recognizes two types of long-arm jurisdiction, specific and general jurisdiction. *Tom Togs, Inc.*, 318 N.C. at 365, 348 S.E.2d at 786. Specific jurisdiction may be exercised where a case arises from or is related to the defendant's contacts with the forum state.

{42} To determine whether it may assert specific jurisdiction over a defendant, a court considers (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State, (2) whether the plaintiffs claims arise out of those activities directed at the State, and (3) whether the exercise of personal jurisdiction is constitutionally reasonable. *Havey v. Valentine*, 172 N.C. App. 812, 814, 616 S.E.2d 642, 646–47 (2005). When specific jurisdiction exists, "a defendant has 'fair warning' that he may be sued in a state for injuries arising from activities that he 'purposefully directed' toward that state's residents." *Tom Togs, Inc.*, 318 N.C. at 366, 348 S.E.2d at 786.

{43} "General jurisdiction" may be exercised where the claim does not arise out of the defendant's contact with the forum, but there are sufficient continuous and systematic contacts between defendant and the forum state. *Bruggeman*, 138 N.C. App. at 617, 532 S.E.2d at 219. Requiring the contacts to be continuous and systematic is a more demanding standard than is necessary for establishing specific jurisdiction. *ALS Scan, Inc. v. Digital Serv., Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

## IV. ANALYSIS

{44} Esoterix claims that personal jurisdiction here is supported by both specific and general jurisdiction over Counsyl. The Court first analyzes specific jurisdiction and then general jurisdiction.

A.      Specific Jurisdiction

{45} Esoterix urges that it has proven specific jurisdiction based on evidence which demonstrates that Counsyl purposely directed tortious conduct toward North Carolina knowing that injury would be suffered here. That is, Esoterix claims that hiring employees it knew to have North Carolina based contracts and which hiring would harm a North Carolina corporation is adequate to support a finding of specific jurisdiction, even if the acts in connection with that hiring were performed out of state. For support of this general proposition within North Carolina precedent, Esoterix cites *Havey*, 172 N.C. App. at 818, 616 S.E.2d at 648. While noting generally that personal jurisdiction might arise based on out-of-state conduct targeted toward injury within North Carolina, the *Havey* court actually reversed the trial court's finding of personal jurisdiction on the facts of that case, which related to personal injury suffered in North Carolina during the unloading of furniture in North Carolina, but which furniture had been purchased in and shipped from Vermont. 172 N.C. App. at 820–21, 661 S.E.2d at 649–50.

{46} The question of personal jurisdiction here does not arise in the context of products liability for product shipped into North Carolina. Rather, it arises from the assertion that a subsequent employer located out-of-state may be subjected to personal jurisdiction in North Carolina when hiring employees who contracted with a prior employer located in North Carolina and the employment contract with which the subsequent employer is alleged to have interfered is governed by North Carolina law. Esoterix champions two federal decisions from within the First Circuit, which it claims have a substantial similarity to the facts of this case, *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1 (1st Cir. 2009) and *Optos, Inc. v. Topcon Med. Sys., Inc.*, No. 10-12016-DJC, 2011 WL 841254, at *20 (D. Mass. Mar. 7, 2011). In each case, the out-of-state subsequent employer hired the plaintiff's former employee with full knowledge of restrictive covenants in the employment contract. The courts found personal jurisdiction in the state of the first employer's residence, even though the subsequent employer undertook no act in the forum state connected to the claim. A close reading of those cases demonstrates the importance

the courts placed on the foreseeability by the subsequent employer of the likelihood that it would be sued in the forum state.

{47} The United States Supreme Court established that conduct necessary to support specific jurisdiction must be "related to or arise out of a defendant's contacts with the forum." *Helicopteros Nancionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868 (1984). *Astro-Med* found that the out-of-state subsequent employer's interference with the in-state employment contract met the *Helicopteros* "relatedness" test because the out-of-state employer hired the employees knowing that injury would result in the forum state. *Astro-Med*, 591 F.3d at 10; *Optos, Inc.*, 2011 WL 841254, at *10. The courts found that such knowledge and following injury satisfied the *Helicopteros* standard. *Id.* As the *Optos* court explained, the key consideration was whether it was foreseeable that the out-of-state employer might be held accountable in the forum state. 2011 WL 84125 at *11.

{48} It is not at all clear that any North Carolina precedent would support a standard of personal jurisdiction that has foreseeability as its "touchstone." The Court need not resolve that issue, as its decision rests on other grounds. Therefore, the Court also has not had to consider fully the issue of whether the reasoning on which *Astro-Med* and *Optos* rest survives after two United States Supreme Court opinions handed down on June 27, 2011. *Goodyear Dunlop Tires Operations v. Brown*, ___ U.S. ___, 131 S. Ct. 2846 (2011) and *J. McIntyre Mach., Ltd. v. Nicastro*, ___ U.S. ___, 131 S. Ct. 2780 (2011). Of the two, *McIntyre* is more pertinent to this inquiry, as it deals with specific jurisdiction. The analysis is complicated by the fact that the actual result in *McIntyre* was achieved by a combination of a plurality opinion of four justices and a concurring opinion of two other justices. The plurality rejected a line of cases which it indicated have "made foreseeability the touchstone of jurisdiction." *McIntyre*, 131 S.Ct. at 2788. The plurality opinion alone cannot overrule this line of cases. *Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 993 (1977). The concurring opinion would defer establishing a specific standard to a subsequent case. *McIntyre*, 131 S.Ct. at 2792.

{49} While it is true that the employment contracts with Esoterix has a consent to jurisdiction in North Carolina, so that it was obvious that McKey and Mecklenburg might well be sued in North Carolina, and such suit would trigger indemnity by Counsyl, this awareness does not automatically lead to the conclusion that Counsyl purposely availed itself of the benefits of North Carolina law or directed its conduct at North Carolina when it extended offers of employment outside the state, such offers were accepted outside the state, for the purpose of performing job duties outside the state. The Court is not prepared to accept the principle that any out-of-state employer who enters an employment contract with an out-of-state employee having a prior employment contract with a North Carolina employer is necessarily exposed to personal jurisdiction in North Carolina on a claim that it tortiously interfered with that contract because it knew of restrictive covenants, the violation of which may generate claims of harm by the North Carolina corporation. The Court believes due process requires more than such "knowledge plus injury."

{50} The Court is not aware that any North Carolina decision has cited *Astro-Med* or *Optos*, or a case on similar facts decided pursuant to the same foreseeability standard.

{51} Personal jurisdiction determinations vary from case to case and are necessarily fact specific. Two North Carolina Court of Appeals decisions here serve as book-ends for analyzing the facts of this case. *Laboratory Corp. of Am. Holdings v. Caccuro*, ___ N.C. App. ___, ___ S.E.2d ___, No. COA10-877, 2011 WL 2448503 (N.C. App. June 21, 2011) upheld the exercise of personal jurisdiction over the challenge of the departing employee, and *Deer Corp. v. Carter*, 177 N.C. App. 314, 629 S.E.2d 159 (2006) found no jurisdiction over claims of alleged tortious interference by a foreign defendant with a North Carolina contract.

{52} In *LabCorp*, the court rejected the personal jurisdiction challenge by a former LabCorp employee with a territory outside of North Carolina. LabCorp also initially sued the subsequent out-of-state employee but did not include that employer in its amended complaint. The court noted that "[w]ith respect to specific

jurisdiction, 'the relationship among the defendant, the forum state, and the cause of action is the essential foundation for the exercise of *in personam* jurisdiction.'" 2011 WL 2448503, at *4 (citing *Tom Togs, Inc.*, 318 N.C. at 366, 348 S.E.2d at 786 (extending an employment offer to a North Carolina resident who accepted in North Carolina is adequate to constitute purposeful availment of North Carolina's laws). The court found that for this employment contract a pervasive connection to North Carolina existed even though the employee lived and worked outside of North Carolina. Factors included receiving checks issued from North Carolina, using a vehicle procured through and insured in North Carolina, and other activities incident to the employment being performed in North Carolina. The holding would make it difficult for McKey and Mecklenburg to challenge jurisdiction, but the holding does not necessarily extend to finding jurisdiction over Counsyl.

{53} In *Deer*, the plaintiff North Carolina corporation sought to have an English national held liable for tortiously interfering with its employee's contract by encouraging the employee to accept employment with a competitor, as well as for related claims, including trade secret misappropriation. *Deer*, 177 N.C. App. at 316, 629 S.E.2d at 162. Much of the court's decision addressed whether the plaintiff could rely on only a *prima facie* showing of jurisdiction rather than sustaining proof by a preponderance of evidence, such that the trial court erred in denying jurisdiction by relying on the defendant's opposing evidence. The court held that the plaintiff was required to prove jurisdiction by a preponderance of the evidence and that the trial court's factual findings rejecting certain of plaintiff's proposed evidence was controlling. *Id.* at 322, 629 S.E.2d at 166. But, even so, there was uncontested evidence that there had been a number of phone calls with the plaintiff in North Carolina and defendant had visited in North Carolina. Nevertheless, the court found that plaintiff had proven neither general nor specific jurisdiction. *Id.* at 328–29; 629 S.E.2d at 169–70. In reaching its conclusion, the court considered not only the defendant's reasonable anticipation of being sued in North Carolina, but other factors regarding the quantity and quality of the defendant's contact with the state. *Id.* at 326–27, 629 S.E.2d at 168–69.

{54} The Court concludes that the North Carolina standard for specific jurisdiction requires inquiry into the subsequent employer's conduct specifically directed at North Carolina in connection with the contract at issue, such that the out-of-state employer may be found to have purposely availed a benefit from North Carolina, and that specific jurisdiction over the employer cannot rest solely on the nexus that the employee has with the State and an employee's awareness of that nexus.[3]  An employer's knowledge that an employee may violate a restrictive covenant governed by North Carolina law is not alone adequate to satisfy due process in exercising personal jurisdiction.  Further, the Court does not believe the mere offer of indemnity against liability is sufficient to bring the exercise of personal jurisdiction within the ambit of specific jurisdiction.  Rather, the Court believes the specific jurisdiction inquiry requires there to be some act by the subsequent employer targeted more directly at North Carolina.

{55} That is not to say that the new employer's knowledge is altogether irrelevant.  A defendant may be subject to general jurisdiction even when special jurisdiction is lacking, and the facts on which Esoterix urges specific jurisdiction play into the Court's consideration of whether the exercise of general jurisdiction would be fair and reasonable, all factors considered.  *See Cameron-Brown Co.*, 83 N.C. App. at 284, 350 S.E.2d at 114.  The Court then turns to the question of general jurisdiction.

B.    General Jurisdiction

{56} The question is whether the combination of factors catalogued in the statement of facts, taken together, constitute continuous and systematic contacts that are sufficiently substantial to justify the exercise of general jurisdiction.  *See Perkins v. Benquet Consol. Mining Co.*, 342 U.S. 437, 447, 72 S. Ct. 413, 419 (1952);

---

[3] The Court is aware that it must consider the forum state's interest in determining jurisdiction, particularly when the plaintiff brings suit in its own resident state.  But, North Carolina's interest is implicated not only in the decision reached in this single case, but also would be implicated in other cases which might utilize the principle on which the decision rests.  The standard the Court follows reflects the Court's belief that a North Carolina corporation that hires an out-of-state employee with knowledge that the employee has a covenant not to compete with his former employee is not, without more, necessarily subjected to suit for tortious interference in the foreign forum.

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317, 66 S. Ct. 154, 159 (1945). Isolated instances of advertising or solicitation alone are not adequate to support general jurisdiction. *See Culp, Inc. v. Huntington Fabrics, Inc.*, ___ F. Supp. 2d ___, No. 1: 09 CV 611, 2011 WL 1230820, at *8–12 (M.D.N.C. Mar. 28, 2011) (citations omitted). Internet marketing that reaches North Carolina residents may be relevant but only where it is targeted toward North Carolina residents. *Dailey v. Popma*, 191 N.C. App. 64, 70, 662 S.E.2d 12, 16 (2008) (considering specific jurisdiction); *Havey v. Valentine*, 172 N.C. App. 812, 816–19, 616 S.E.2d 642 (2005) (same). Mere communications sent into North Carolina from outside the state do not themselves establish the defendant's presence in the state. *Szulik v. TAG Virgin Islands, Inc.,* No. 5:10-CV-585-D, 2011 WL 1797895, at *3 (E.D.N.C. May 2, 2011) (citing *Stover v. O'Connell Assoc., Inc.*, 84 F.3d 132, 137 (4th Cir. 1996)). The jurisdictional determination does not follow a particular formula, but looks at multiple factors to weigh whether the quality and quantity of contacts between the defendant and North Carolina render the exercise of jurisdiction fair and reasonable. *Vitela v. Richardson,* No. COA10-693, 2011 WL 2207578, at *3 (N.C. App. June 7, 2011).

{57} On the other hand, the fact a resident seeks the protections of its own forum courts is among the factors to be considered which may weigh in favor of a finding general jurisdiction. "Less extensive contacts" are necessary when the plaintiff is a North Carolina resident. *Mabry v. Fuller-Schuwayer Co.*, 50 N.C. App. 245, 250, 273 S.E.2d 509, 512 (1981); *see also Bruggeman*, 138 N.C. App. at 618, 532 S.E.2d at 219.

{58} As did the court in *Bruggeman* on the facts before it, the Court, considering all the factors before it, concludes that while the Defendant "does not have a high quantity of contacts with this State, the quality of those contacts" is adequate to support jurisdiction. *Id.*

{59} Having found adequate contacts to support the exercise of personal jurisdiction consistent with due process, the Court concludes that other factors make the exercise of that jurisdiction reasonable. North Carolina clearly has an

interest in the adjudication of a claim involving one of its residents; Esoterix may be expected to utilize North Carolina witnesses in the effort to prove its claim; and there is no evidence of forum shopping. *See Bruggemann*, 138 N.C. App. at 618–19, 532 S.Ed.2d at 220.

## V. CONCLUSIONS OF LAW

{60} Based on the foregoing, the Court concludes:

1. Plaintiff has not proven an adequate basis for the exercise of specific jurisdiction;

2. Plaintiff has proven an adequate basis for the exercise of general jurisdiction;

3. Having proven an adequate basis for general jurisdiction, it is reasonable and fair that the case be litigated in this Court;

4. The exercise of jurisdiction comports with the traditional notion of fair play and substantial justice;

5. The State of North Carolina has an interest to be protected by the litigation of the claims in this Court; and

6. The litigation of the matter in this Court adequately balances the convenience of the parties.

IT IS THEREFORE ORDERED that Counsyl's Motion to Dismiss pursuant to N.C. Civ. Proc. 12(b)(2) is DENIED.

This, the 22nd day of August, 2011.