EVONIK ENERGY SERVICES GMBH, PLAINTIFF v. FRANK EBINGER, EBINGER KATALYSATORSERVICE GMBH & CO. KG, ENVICA GMBH N/K/A EBINGER GMBH, ENVICA KAT GMBH, AND EBINGER VERWALTUNGS GMBH DEFENDANTS

No. COA10-1299

(Filed 7 June 2011)

**Jurisdiction— personal jurisdiction—due process—lack of minimum contacts**

The trial court erred in a declaratory judgment action by concluding that exercising personal jurisdiction would not violate defendants' due process rights. Defendants did not have the requisite minimum contacts with North Carolina, defendants' contacts were not the source of or closely related to this cause of action, and North Carolina did not have a strong interest in resolving the effects of a breach of contract under German law on matters of European and United States patent law.

Appeal by Defendants from order entered 21 May 2010 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 22 March 2011.

*Alston & Bird LLP, by Benjamin F. Sidbury, Mark Vasco, Scott Stevens, and Debra Lofano, for Plaintiff.*

*Robinson Bradshaw & Hinson, P.A., by Mark W. Merritt and Lawrence C. Moore, III, for Defendants.*

STEPHENS, Judge.

*Factual and Procedural Background*

On 21 June 2000, Maik Blohm ("Blohm"), a German citizen, and Katalysatorservice GmbH ("KAS"), a German corporation, entered into an employment agreement, the terms of which provided that "Blohm shall treat all internal corporate matters that have been entrusted to him or that he has otherwise been privy to as confidential. This obligation shall continue beyond the termination of the employment relationship." Subsequently, KAS' name was changed to ENVICA Kat GmbH ("ENVICA Kat"), and Blohm and ENVICA Kat executed another employment agreement, which again provided that "Blohm shall maintain the strictest secrecy about all operational and business matters and processes of ENVICA Kat which become known to him in his work and its surrounding circumstances both during the employment relationship and after its termination." In June 2004, Blohm left ENVICA Kat.[1]

On 16 December 2005, patent application number 05 027 634.4 (the "European Patent") was filed with the European Patent Office;[2] Blohm was listed as co-inventor on the patent application. Between 15 December 2006 and 1 April 2009, patent application numbers 11/640,475, 12/384,122, and 12/384,159 (the "United States Applications") were filed with the United States Patent Office; each application named Blohm as a co-inventor and listed the filing date of the European Patent as the "Foreign Application Priority Date." Sometime thereafter, Blohm transferred ownership of the European Patent and the United States Applications to Plaintiff Evonik Energy Services GmbH ("Evonik"), a German corporation whose wholly-owned subsidiary Evonik Energy Services LLC is a North Carolina company.

On 29 June 2009, Frank Ebinger, on behalf of Ebinger GmbH, of which Ebinger Kat is a wholly-owned subsidiary, sent a letter to

---

1. ENVICA Kat has since changed its name to Ebinger Katalysatorservice GmbH ("Ebinger Kat").

2. The record contains what appears to be the actual patent "EP 1 797 954 A1," which lists the "Anmeldenummer," or application number, as "05 027 634.4."

Blohm informing him that Ebinger GmbH's "research has shown that [the European Patent] contains information that was almost exclusively obtained within the context of your work for our company." The letter also stated that Blohm's employment agreement contains a non-disclosure clause "that prohibits the dissemination of such information [] after the employment relationship has been terminated[,]" and that Ebinger GmbH "will hold [Blohm] liable for any direct and/or indirect damages that [his] breach of contract might create for [Ebinger GmbH]."

On 16 October 2009, counsel for Ebinger Kat sent another letter to Blohm, informing Blohm that his "consultancy contract" with Evonik "constitutes another grave violation of your [] obligation to maintain confidentiality."[3]

On 17 November 2009, Evonik filed in Mecklenburg County Superior Court a complaint against Frank Ebinger, Ebinger Kat, "Envica GmbH n/k/a Ebinger GmbH," ENVICA Kat, and "Ebinger Verwaltungs GmbH" (collectively "Defendants"). In the complaint, Evonik (1) alleged that Evonik is the owner and assignee of the United States Applications; (2) alleged that Defendants sent to Blohm letters in which Defendants asserted ownership of the United States Applications; and (3) sought "a declaration that [Evonik] is the lawful owner of the [United States Applications]."

On 21 April 2010, Defendants moved to dismiss the complaint under North Carolina Rule of Civil Procedure 12(b)(6) based on an alleged lack of both subject matter and personal jurisdiction. The parties submitted affidavits, exhibits, and memoranda regarding Defendants' motion to dismiss, and on 21 May 2010, following a 12 May 2010 hearing, the trial court, the Honorable W. Robert Bell presiding, denied Defendants' motions. On 26 May 2010, Defendants gave notice of appeal from the trial court's order.

## Discussion

In the order denying Defendants' motion to dismiss, the trial court did not make any findings to support its conclusion that "Defendants are subject to personal jurisdiction in the State of North Carolina and that the exercise of jurisdiction over [] Defendants satisfies due process." Where no such findings are made, "it will be

---

3. According to Frank Ebinger's affidavit, a "criminal complaint" was made "against Blohm in Germany for misappropriation of [Ebinger Kat's] trade secrets."

presumed that the judge, upon proper evidence, found facts sufficient to support his judgment." *City of Salisbury v. Kirk Realty Co.*, 48 N.C. App. 427, 429, 268 S.E.2d 873, 875 (1980) (quoting *Haiduven v. Cooper*, 23 N.C. App. 67, 69, 208 S.E.2d 223, 225 (1974)). On appeal, we "review the record to determine whether it contains competent evidence to support the trial court's presumed findings to support its ruling that [Defendants are] subject to personal jurisdiction in the courts of this state." *A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 258-59, 625 S.E.2d 894, 898 (2006).

We note that on appeal, in support of its argument that the trial court properly determined that this State's exercise of personal jurisdiction over Defendants "satisfies due process," Evonik offers evidence of Defendants' electronic communications with "SCR Tech," a North Carolina corporation based in Charlotte. Evonik contends that these communications establish, *inter alia*, a continuing business relationship between Defendants and SCR Tech.[4] Evonik attempted to put this same evidence before the trial court at the hearing on Defendants' motion to dismiss, but the trial court declined Evonik's "offer" of "the opportunity [] to review some of these [communications] in camera if you think it would assist the Court," stating that the court was "going to stick with the briefs right now, thank you." The hearing ended with that exchange, and there is no indication that the trial court later accepted the offer to review the additional evidence. In light of the trial court's decision not to review any of this evidence, we think it illogical to presume that the trial court made a finding of fact regarding this evidence when the court had declined to consider the evidence at the hearing and had no further opportunity to review it. To the extent there would be a presumption that the trial court properly considered this evidence and made findings regarding the evidence, we conclude that such a presumption has been rebutted. Accordingly, we will not presume findings by the trial court based upon evidence of electronic communications purporting to establish additional contacts between Defendants and North Carolina.

---

4. In 2001, ENVICA Kat, along with another company, co-founded "SCR Tech GmbH," which in turn founded "the American company SCR Tech LLC in Charlotte[, North Carolina]." In 2005, SCR Tech, ENVICA Kat, and another company entered into a settlement agreement, whereby ENVICA Kat agreed to sell SCR Tech to the other company. Currently, litigation involving trade secret misappropriation is pending between Evonik and SCR Tech. Evonik contends that Defendants have actively participated in, and supported SCR Tech in, the "SCR Tech litigation." Evonik further contends that Defendants and SCR Tech have corresponded with each other in efforts to form a long-term business partnership.

Without this additional evidence of Defendants' contacts, the only evidence offered by Evonik to satisfy its burden of proving North Carolina's personal jurisdiction over Defendants is as follows: Frank Ebinger's participation as a third-party witness in the SCR Tech litigation; Frank Ebinger's 2008 meeting in North Carolina with the president of SCR Tech, from which no "business transaction" resulted; the two letters to Blohm; and Defendants' contractual obligations under the 2005 settlement agreement following the sale of SCR Tech. For the following reasons, we find this evidence, and those presumed findings logically supported by this evidence, insufficient to support the trial court's conclusion that North Carolina's exercise of personal jurisdiction over Defendants satisfies due process.[5]

> To satisfy the requirements of the due process clause, there must exist certain minimum contacts between the non-resident defendant and the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. There must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

*A.R. Haire*, 176 N.C. App. at 259-60, 625 S.E.2d at 899 (internal quotation marks, citations, and brackets omitted).

In determining whether minimum contacts exist, the court looks at several factors, including: (1) "the quantity of the contacts;" (2) "the nature and quality of the contacts;" (3) "the source and connection of the cause of action with those contacts;" (4) the interest of the forum state; and (5) the convenience to the parties. *Phoenix Am. Corp. v. Brissey*, 46 N.C. App. 527, 530-31, 265 S.E.2d 476, 479 (1980). These factors are not to be applied mechanically; rather, the court must weigh the factors and determine what is "fair and reasonable and just" to both parties. *Id.* at 531, 265 S.E.2d at 479 (citation omitted). "No single factor controls, but they all must be weighed in light of fundamental fairness and the circumstances of the case." *B.F. Goodrich Co. v. Tire King of Greensboro, Inc.*, 80 N.C. App. 129, 132, 341 S.E.2d 65, 67 (1986).

Regarding the quantity and quality of Defendants' contacts in this case, we note that the five contacts alleged by Evonik—two letters

---

5. For ease of discussion, we assume, without deciding, that all of the Defendants, both corporations and persons, are so interrelated that evidence supporting personal jurisdiction over one defendant would support personal jurisdiction over all Defendants.

written from Germany, Frank Ebinger's participation as a witness in an unrelated litigation, Frank Ebinger's attendance at an unrelated business meeting, and a 2005 settlement agreement—are sporadic rather than continuous, and none of the contacts shows Defendants purposefully availing themselves "of the privilege of conducting activities within the forum state" or "invoking the benefits and protections of its laws." *A.R. Haire*, 176 N.C. App. at 260, 625 S.E.2d at 899. Although, as a general matter, Frank Ebinger's participation as a witness in a North Carolina proceeding may appear to be an invocation of the benefits of North Carolina laws, as previously held by this Court, participation in an unrelated litigation in the forum state is insufficient to support a finding that a defendant's contacts properly subject that defendant to personal jurisdiction in our courts. *See Buck v. Heavner*, 93 N.C. App. 142, 146, 377 S.E.2d 75, 78 (1989) (in ruling that the trial court improperly found defendant subject to personal jurisdiction in North Carolina, noting that "[d]efendant's general appearance in the custody and support action was a submission to jurisdiction in that action only and does not waive his right to object to jurisdiction in separate causes of action."). Furthermore, while Evonik may be correct in asserting that ENVICA Kat's signature on a settlement agreement involving North Carolina parties subjects ENVICA Kat to a "continuing obligation" to North Carolina residents, our Supreme Court has held that a single contract between a non-party state resident and nonresident defendant does not automatically confer jurisdiction where that contract does not have a substantial connection with the State. *See Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 367, 348 S.E.2d 782, 786 (1986) ("Although a contractual relationship between a North Carolina resident and an out-of-state party alone does not automatically establish the necessary minimum contacts with this State, nevertheless, a single contract may be a sufficient basis for the exercise of in *personam* jurisdiction if it has a substantial connection with this State." (emphasis in original)). The "continuing obligation" referred to by Evonik is the contract provision stating that ENVICA Kat will not use certain licensed intellectual property in "NAFTA Territories."[6] Such an obligation to refrain from operating in "NAFTA Territories," which include North Carolina, can hardly be seen as a contractual obligation with a "substantial connection" to North Carolina. In our view, the quantity and quality of Defendants' contacts with North Carolina do not sup-

---

6. "NAFTA" is an acronym for the North American Free Trade Agreement. The signatories to this agreement are Canada, the United States, and Mexico.

port a finding that the due process requirement of minimum contacts has been satisfied in this case.

Furthermore, regarding "the source and connection of the cause of action with those contacts," we conclude that Defendants' contacts are not the source of Evonik's cause of action. Evonik contends on appeal that the sources of the cause of action are Frank Ebinger's participation in the SCR Tech litigation and the letters to Blohm. However, while these actions by Defendants may have prompted Evonik to initiate the present litigation, these actions are not the source of the cause of action and did not "give rise to" the litigation. Evonik's claim is not a defamation claim, where the cause of action would arise from statements by Defendants. Rather, it is a declaratory judgment claim, which is only available when a party is asserting rights "under a deed, will, written contract or other writings constituting a contract" or when a party's rights are affected "by a statute, municipal ordinance, contract or franchise." N.C. Gen. Stat. § 1-254 (2009). Evonik is seeking a declaration that it is the owner of the United States Applications. There have been no direct challenges to Evonik's ownership based on the assignment of the United States Applications. The only challenge to Evonik's ownership is the "cloud" placed on that ownership by a series of hypothetical circumstances rooted initially in Frank Ebinger's and Ebinger Kat's assertion that Blohm's application for the European Patent was a violation of an employment agreement between Blohm and KAS/ENVICA Kat.[7] As such, the sources of Evonik's declaratory judgment claim are the employment contracts, which notably were signed by the parties in Germany and are governed by German law. Accordingly, we conclude that Defendants' contacts are only tangentially connected to the cause of action and are certainly not the source of Evonik's declaratory judgment claim.

The next factor in the minimum contacts analysis—the interest of the forum state—likewise militates against North Carolina's exercise of personal jurisdiction in this case. In order for our courts to resolve Evonik's claim and fully determine its ownership of the United States Applications, we would have to ascertain (1) whether Blohm actually violated the non-disclosure clauses of the employment agreements (a

---

7. Evonik contends that by instituting a trade secret misappropriation action against Blohm, Ebinger Kat has "placed a cloud" on Evonik's ownership of the United States Applications. Evonik contends that "[a]n adverse judgment against [] Blohm, who is co-inventor of the [United States Applications], could affect the ownership status of the [United States Applications]." (Emphasis added).

matter of German contract law currently being considered in German courts); (2) whether Blohm's violation would affect his inventor status on the European Patent (a matter of European patent law); and (3) whether a change in the inventor status on the European Patent would affect Blohm's claim of priority to the European Patent and his inventor status on the United States Applications (a matter of United States patent law). While our courts may have an interest in providing a forum for Evonik to address its grievances, *Tom Togs*, 318 N.C. at 367, 348 S.E.2d at 787 ("It is generally conceded that a state has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 85 L. Ed. 2d 528, 541 (1985))), we clearly have no interest in pronouncing on the effects of a breach of contract under German law on matters of European and United States Patent law. Surely the principles of comity and preemption support a finding that our Courts have little interest in resolving this matter.

Finally, regarding the factor of convenience for the parties, we conclude that, in spite of Frank Ebinger's two trips to North Carolina, it would be inconvenient for Defendants to defend this matter in North Carolina based on their location in Germany. This is especially so in light of our conclusions that (1) Defendants have few contacts with North Carolina; (2) Defendants' contacts are sporadic; (3) Defendants' contacts are not the source of, and are not closely related to, Evonik's cause of action; and (4) the State of North Carolina does not have a strong interest in resolving this matter.

Based on the foregoing, we conclude that Defendants do not have the requisite minimum contacts with this State and that the trial court erroneously found that this State's exercise of personal jurisdiction over Defendants would not violate Defendants' due process rights. Accordingly, the order of the trial court is

REVERSED.

Judges HUNTER, ROBERT C., and ERVIN concur.