Steag Energy Services GmbH v. Ebinger, 2012 NCBC 2.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF MECKLENBURG | 11 CVS 14525 |

STEAG ENERGY SERVICES GMBH  )
f/k/a EVONIK ENERGY SERVICES  )
GMBH,  )
  )
        Plaintiff,  )
  )
    v.  )
  )
  )        **ORDER ON DEFENDANTS'**
FRANK EBINGER, EBINGER  )        **MOTION TO DISMISS**
KATALYSATORSERVICE GMBH &  )
CO. KG, ENVICA GMBH n/k/a  )
EBINGER GMBH, ENVICA KAT  )
GMBH, and EBINGER  )
VERWALTUNGS GMBH,  )
  )
        Defendants.  )
  )

{1} This matter is before the Court on Defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(2) of the North Carolina Rules of Civil Procedure ("Rule(s)"). For the reasons stated below, the Motion is GRANTED.

> *Alston & Bird LLP, by Mark Vasco, Benjamin F. Sidbury, M. Scott Stevens, and Debra Lofano for Plaintiff Steag Energy Services GmbH f/k/a Evonik Energy Services GmbH.*

> *Robinson, Bradshaw & Hinson, P.A., by Mark W. Merritt, Lawrence C. Moore, III, and Matthew F. Tilley for Defendants Frank Ebinger, Ebinger Katalysatorservice GmbH & Co. KG, Envica GmbH n/k/a Ebinger GmbH, Envica Kat GmbH, and Ebinger Verwaltungs GmbH.*

Gale, Judge.

## I. INTRODUCTION

{2} Plaintiff seeks declaratory and monetary relief related to a European patent and three related United States patent applications, and as to which.

Plaintiff contends that the Defendants have made statements or taken actions which place a "cloud" or "taint" over Plaintiff's ownership of them. Plaintiff now seeks declaratory relief pursuant to G.S. §§ 1-253 and 1-254 and further asserts a claim for slander of title.

{3} This action was filed shortly after the dismissal of an earlier action in which the North Carolina Court of Appeals held that Plaintiff failed to establish personal jurisdiction. *Evonik Entergy Services GmbH, v. Ebinger*, ___ N.C. App. ___, ___, 712 S.E.2d 690, 692 (2011) (the "Initial Action"). While this second action carries forward the factual allegations and the declaratory judgment claim of the earlier action, Plaintiff asserts that it has now presented additional facts which, when considered in tandem with those in the earlier action, demonstrate a *prima facie* basis for jurisdiction, entitling Plaintiff to pursue jurisdictional discovery prior to a final jurisdictional ruling. Plaintiff has further added the claim for slander of title.

{4} Defendants expectedly contend that the Court of Appeals' decision in the Initial Action is preclusive and bars this action. Defendants additionally contend that even if the Court examines jurisdiction anew, Plaintiff has again failed to make a *prima facie* showing of personal jurisdiction. Defendants separately raise subject matter jurisdiction questions which the Court need not reach if there is no personal jurisdiction.

{5} The Court has carefully reviewed the information that Plaintiff contends was not considered by the Court of Appeals and which Plaintiff believes when added to information in the earlier action tips the scales in favor of finding the *prima facie* basis for personal jurisdiction. The Court concludes that in substantial part, the new information is additive but not materially different from the facts the Court of Appeals found determinative, and further, that the combination of allegations, even if sufficient to constitute a changed record to avoid issue preclusion, are not sufficient to warrant this Court's exercise of either specific or general personal jurisdiction.

## II.  PROCEDURAL BACKGROUND

{6}  On November 17, 2009, Plaintiff filed the Initial Action in Mecklenburg County Superior Court.  The Initial Action sought only a declaratory relief that Evonik Energy Services GmbH ("Evonik")[1] owns the European patent and the United States patent applications.  On April 21, 2010, Defendants moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(2).  The trial court denied the motion and Defendants appealed.  On June 7, 2011 the North Carolina Court of Appeals reversed, finding a lack of personal jurisdiction.

{7}  Plaintiff filed this action in Mecklenburg County Superior Court on July 28, 2011.  The matter was designated as a Complex Business Case by Chief Justice Sarah Parker on July 29, 2011 and assigned to this Court by Order dated August 2, 2011.  On September 29, 2011, Defendants moved to dismiss for lack of jurisdiction (the "Motion").[2]  The Motion has been fully briefed, the Court heard oral arguments, and the matter is ripe for disposition.

## III.  STATEMENT OF FACTS

{8}  Defendants have challenged jurisdiction.  Accordingly, the Court has looked to facts taken from the pleadings as well as other evidence presented.

{9}  Plaintiff Steag is a corporation organized and existing under the law of Germany with a principal place of business in Essen, Germany.  Steag's wholly owned subsidiary is Steag Energy Services LLC, a North Carolina limited liability company.

{10}  Defendant Frank Ebinger ("Ebinger") is a citizen and resident of Wildeshausen, Germany.  Defendants Ebinger Katalysatorservice GmbH & Co. KG ("Ebinger Kat"), Envica GmbH n/k/a Ebinger GmbH ("Ebinger GmbH"), Envica Kat

---

[1] Evonik Energy Services GMBH later became known as Steag Energy Services.

[2]  Defendants challenge both personal and subject matter jurisdiction.  Because the Court determines the motion on personal jurisdictional grounds, it need not resolve any dispute whether there is subject matter jurisdiction because the claims arises under the federal patent laws.  Without discussing the issue at length, inventorship is a matter of federal law but ownership is governed by state law.

GmbH ("Envica Kat"); and Ebinger Verwaltungs GmbH ("Verwaltungs") are corporations organized and existing under the laws of Germany with principal places of business in Wildeshausen, Germany.

{11} On June 21, 2000, Maik Blohm ("Blohm"), a German citizen and chemical engineer, entered into an employment contract ("Employment Contract") with Katalysatorservice GmbH ("KAS") which provided that "Blohm shall treat all internal corporate matters that have been entrusted to him or that he has otherwise been privy to as confidential. This obligation shall continue beyond the termination of the employment relationship." (Aff. of Frank Ebinger, Ex. A. ¶ 8, April 8, 2010 ("First Ebinger Aff.").)

{12} KAS changed its name to Envica Kat,[3] and on April 2, 2004, Blohm and Envica Kat executed another employment contract ("Service Agreement") which provided that "Blohm shall maintain the strictest secrecy about all operational and business matters and processes of ENVICA KAT which become known to him in his work and its surrounding circumstances both during the employment relationship and after its termination." (First Ebinger Aff. Ex. B ¶ 8.2.) Blohm left employment with Envica Kat in June 2004. *Evonik*, ___ N.C. App. ____, ____, 712 S.E.2d 690, 692 (2011).

{13} On December 16, 2005, European patent number EP 1 797 954 B1[4] ("European Patent") was filed with the European Patent Office. (Compl. ¶ 22.) The application listed Blohm as a co-inventor of the technology which was directed to a method for treating flue gas catalysts. (Compl. ¶ 22.) Between December 15, 2006 and April 1, 2009, patent application numbers 11/640,475, 12/384,122, and 12/384,159 ("United States Patent Applications") were filed with the United States Patent Office. (Compl. ¶¶ 23–24.) Each application concerns the method for treating flue gas catalysts, lists Blohm as a co-inventor, and claims priority to the European Patent.

---

[3] Envica Kat has since changed its name to Ebinger Kat.

[4] The European patent was originally assigned an application number of 05 027 634.4 and a publication number of EP 1 797 954 A1.

{14} Thereafter, Blohm transferred ownership of the Eurpoean Patent and the Untied States Applications to Steag whose wholly owned subsidiary Steag Energy Services LLC is a North Carolina limited liability company. (Compl. ¶ 3.)

{15} On or about June 29, 2009, Ebinger, on behalf of the Defendants, sent Blohm a letter informing him that Ebinger GmbH's "research has shown that [the European Patent] contains information that was almost exclusively obtained within the context of [Blohm's] work for [Ebinger GmbH]." (First Ebinger Aff. Ex. D.) The letter reminds Blohm of the non-disclosure provisions of his employment contracts and iterates that Ebinger GmbH "will hold [Blohm] liable for any direct and/or indirect damages that [his] breach of contract might create." (First Ebinger Aff. Ex. D.) On October 16, 2009, counsel for Ebinger Kat sent Blohm another letter, informing him that his consulting contract with Evonik "constitutes another grave violation" of Blohm's contractual "obligation to maintain confidentiality." (First Ebinger Aff. Ex. F.) In December 2009, Ebinger made a criminal complaint against Blohm in Germany for misappropriation of trade secrets. (Compl. ¶27; First Ebinger Aff. ¶ 14.)

{16} The record contains certified translations of these two letters. Neither references the United States Applications and neither includes an express assertion that the Defendants own either the European Patent or the United States Patent Applications. However, Plaintiff claims in this litigation, as it did in the Initial Action, that Defendants have claimed ownership. The Court further notes that Defendants also have not expressly disclaimed ownership. Plaintiff claims that a declaration of ownership is needed.

{17} All of the above facts were considered by the trial and appellate courts in the Initial Action. During the May 12, 2010 hearing on Defendants' Motion to Dismiss the Initial Action, Plaintiff attempted to present additional evidence, which consisted of electronic communications between Defendants and SCR-Tech, LLC ("SCR-Tech") which they contend establish a continuing business relationship

between Defendants and a North Carolina based corporation.[5] The trial court declined this "offer," and without considering that evidence denied the motion to dismiss finding that "the exercise of jurisdiction over [ ] Defendants satisfies due process." *Evonik*, ___ N.C. App. at ____, 712 S.E.2d at 693.

{18} In settling the record on appeal from that ruling, Plaintiff sought and obtained an order from the trial court indicating that the electronic communications "were 'submitted for consideration' within the meaning of N.C.R. App. 11(c) . . . and, accordingly, should be included in the Record on Appeal." (Hearing, Pl.'s Ex. 1.) The Court of Appeals, however, declined to consider the electronic communications stating, "we think it illogical to presume that the trial court made a finding of fact regarding this evidence when the court had declined to consider the evidence at the hearing and had no further opportunity to review it." *Evonik*, ___ N.C. App. at ____, 712 S.E.2d at 693.

{19} The Court of Appeals did not remand the matter to the trial court, but determined that Plaintiff had failed to demonstrate personal jurisdiction. It delineated the evidence upon which it based its decision. In summary, that evidence included: (1) Ebinger's participation as a third-party witness in the SCR-Tech Litigation; (2) Ebinger's 2008 meeting in North Carolina with the president of SCR-Tech, from which no "business transaction" resulted; (3) the two letters sent by Ebinger or his counsel to Blohm which were both sent and received in Germany; and (4) a 2005 settlement agreement following the sale of SCR-Tech from which Plaintiff contends that Defendants have continuing obligations. *Evonik*, ___ N.C. App. at ____, 712 S.E.2d at 693. The Court of Appeals reversed the trial court finding "this evidence, and those presumed findings logically supported by this evidence [ ] insufficient to support the trial court's conclusion that North Carolina's exercise of personal jurisdiction over Defendants satisfies due process." *Id.*

---

[5] Litigation between Plaintiff and SCR-Tech is pending before this Court, *SCR-Tech LLC v. Evonik Energy Services, LLC*, No. 08-CVS-16632 (the "SCR-Tech Litigation"). Plaintiff contended in the Initial Action as it does in this action that Defendants' cooperation and participation in the SCR-Tech Litigation supports the exercise of personal jurisdiction over the Defendants.

{20} Plaintiff concedes that the Court of Appeals opinion is binding as to the facts which it considered. However, it also contends that facts which were before the Court of Appeals remain a relevant part of the larger set of facts that have been supplemented with the new allegations of the second action and which may be further supplemented by the jurisdictional discovery to which it contends it is entitled. Plaintiff then interweaves in its Complaint in this action facts which were included in the Initial Action and what it contends are new facts which support a new examination of personal jurisdiction. The following is a summary of the facts upon which Plaintiff now asserts jurisdiction:

(a) Defendants[6] are former owners of SCR-Tech, which is a North Carolina limited liability company with its principal place of business in North Carolina. Defendants' website states that "[i]n the USA, our ultrasonic technology is used by SCR Tech, Charlotte/NC" and that Defendants participated in "[c]onstruction of an identical plant to Wildeshausen in Charlotte N.C., USA." (Compl. ¶ 10.) In his sworn affidavit, Ebinger indicates that SCR-Tech was sold in 2004, and since December of 2005, the Defendants have not engaged in business in North Carolina or the United States. (First Ebinger Aff. ¶ 11.)

(b) Defendants have licensed certain technology to SCR-Tech in North Carolina. (Compl. ¶ 11.)

(c) Defendants have a continuing contractual obligation to SCR-Tech that restricts Defendants from using the licensed technology within the NAFTA territory, including North Carolina, and requires that Defendants maintain the confidentiality of the licensed technology. (Compl. ¶ 12.)

(d) Ebinger traveled to North Carolina for a business meeting with SCR-Tech in January 2008 from which no business transaction resulted. (Compl. ¶ 14.)

---

[6] The Complaint uses the term "Defendants'" without distinguishing between the five (5) named Defendants in this action.

(e) Sometime in late 2009, Defendants and SCR-Tech negotiated a complex business arrangement under which the Parties would strengthen their existing agreements, cross-license their technology to each other, collaborate on the joint development of technology, and explore additional joint ventures. (Compl. ¶ 15.) In November of 2009, SCR-Tech sent Defendants a list of its customers, dates of service, and types of service provided and requested that Defendants provide the same. (Compl. ¶ 16.)

(f) Defendants have actively participated in the SCR-Tech Litigation which is related to the technology taught and claimed in the United States Applications. Ebinger traveled to North Carolina to voluntarily appear for a deposition and submitted affidavits in support of SCR-Tech's claims. (Compl. ¶ 18.) Defendants are coordinating settlement discussions and have agreed that SCR-Tech will prosecute the lawsuit at SCR-Tech's expense. (Compl. ¶¶ 19–20.)

(g) The electronic communications which were not considered in the Initial Action suggest that Defendants' participation in the SCR-Tech litigation is part of a larger continuing business agreement between SCR-Tech and the Defendants. More specifically, those communications reveal: (1) on August 20, 2009, Defendants invited SCR-Tech to continue their 2008 discussions about exploring "the possibility of working together" (Aff. of Debra Lofano ("Lofano Aff.") Ex. H at WCSR-000022); (2) on August 21, 2009, SCR-Tech advised Defendants that "[t]he suit with [Steag] goes well and there can certainly be some positive outcomes for you but the time is running short for getting your input. If we do not have your input there can only be a settlement involving SCR-Tech[ ]" (Lofano Aff. Ex. H at WCSR-000025); (3) on October 1, 2009, Defendants and SCR-Tech discussed the possibility of a business deal that would include reciprocal technology licensing, geographical servicing terms, joint development of technology, and an obligation to provide support in the SCR-Tech litigation including the provision of testimony, documents, and discussion by Ebinger (Lofano Aff. Ex. H at WCSR-000076;

(4) on October 2, 2009, Ebinger responded indicating that his "stomach says: we will have a good common future" (Lofano Aff. Ex. H at WCSR-000018); and (5) on November 11, 2009, SCR-Tech sent Defendants a copy of its "updated reference list" and requested that Defendants also update theirs. (Lofano Aff. Ex. H at WCSR-000047–50.)

(h)  Plaintiff learned only after the record in the Initial Action was closed that as recently as June 23, 2011, Defendants entered into a cooperation agreement with SCR-Tech ("Cooperative Agreement") concerning joint marketing, customer development, market research and development, and technological research and development.  The Cooperative Agreement grants SCR-Tech (1) a license to use Defendants' technology; and (2) a right of first refusal to acquire a majority interest of the equity ownership or assets of Ebinger Kat.  (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Resp. Br.") 3.)[7]

{21}  The only evidence that actually postdates the decision in the Initial Action is the June 23, 2011 Cooperative Agreement.

{22}  Ebinger indicated in his September 27, 2011 affidavit that the Cooperative Agreement "does not involve operations or assets in the United States, but rather involves a grant to SCR Tech of the right to use certain technology in China and a right of first refusal to acquire a majority interest in the equity ownership or assets of Ebinger [Kat]."  (Aff. of Frank Ebinger, ¶ 3, Sept. 27, 2011 ("Second Ebinger Aff.").)

## IV.  STANDARD OF REVIEW

{23}  "[When] jurisdiction is challenged [by a defendant, the] plaintiff has the burden of proving *prima facie* that a statutory basis for jurisdiction exists." *Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758

---

[7]  Plaintiff indicates that it learned of this agreement from a securities filing and that it hopes to obtain the agreement itself and to further explore business relationships between the Parties through jurisdictional discovery.

(1998). "Where unverified allegations in the complaint meet plaintiff's 'initial burden of proving the existence of jurisdiction . . . and defendants . . . do not contradict plaintiff's allegations in their sworn affidavit,' such allegation is accepted as true and deemed controlling." *Id.* "However, to the extent the defendant offers evidence to counter the plaintiffs allegations, those allegations may no longer be accepted as controlling, and the plaintiff can no longer rest on such allegations in the complaint." *Data*, 143 N.C. App. at 101, 545 S.E.2d at 247 (citation omitted). A motion to dismiss pursuant to Rule 12(b)(1) or 12(b)(2) is not viewed in the same manner as a motion to dismiss for failure to state a claim upon which relief can be granted. *Data Gen. Corp. v. County of Durham*, 143 N.C. App. 97, 102, 545 S.E.2d 243, 247 (2001); *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978) (subject matter jurisdiction). Matters outside of the pleadings may be considered and weighed by the court in determining the existence of jurisdiction over the person or the subject matter. *Data*, 143 N.C. App. at 102, 545 S.E.2d at 247 (personal jurisdiction); *Tart*, 38 N.C. App. at 502, 248 S.E.2d at 737 (subject matter jurisdiction). The Court has therefore examined the pleadings as well as additional evidence submitted in connection with the Motion.

## V. ANALYSIS

{24} Defendants contend that the Court of Appeals' prior determination precludes this Court's reconsideration of jurisdiction. Alternatively, Defendants claim that the record in this action, including the limited new additional facts, does not warrant the exercise of jurisdiction.

1. The Question of Whether This Court May Now Consider Jurisdiction

{25} The doctrine of collateral estoppel, also referred to as "issue preclusion" or "estoppel by judgment," precludes relitigation of a fact, question, or right in issue:

> when there has been a final judgment or decree, necessarily determining [the] fact, question or right in issue, rendered by a court of record and of competent jurisdiction, and there is a later suit involving an issue as to the identical fact, question or right theretofore

determined, and involving identical parties or parties in privity with a party or parties to the prior suit.

*State v. Summers*, 351 N.C. 620, 622, 528 S.E.2d 17, 20 (2000) (quoting *King v. Grindstaff*, 284 N.C. 348, 355, 200 S.E.2d 799, 805 (1973)). Litigants often use the terms "collateral estoppel" and "*res judicata*" interchangeably, although the North Carolina Supreme Court recognizes a clear distinction, in that "*res judicata* estops a party or its privity from bringing a subsequent action based on the 'same claim' as that litigated in an earlier action, [whereas] collateral estoppel precludes the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim." *Whiteacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 16, 591 S.E.2d 870, 880 (2004). The matter before the Court involves the issue of personal jurisdiction rather the merits of the underlying claim and is then appropriately resolved pursuant to the doctrine of collateral estoppel. As one federal court explained:

> [a]lthough the dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims.

*N. Ga. Elec. Membership Corp. v. City of Calhoun*, 989 F.2d 429, 433 (11th Cir. 1993)

{26} A plaintiff is collaterally estopped from relitigating the issue of personal jurisdiction where the second court would be reconsidering an unchanged set of facts. *Current v. Webb*, 220 N.C. 425, 427−28, 17 S.E.2d 614, 615−16 (1941) (previous dismissal for lack of personal jurisdiction controlled in subsequent action and barred plaintiff from relitigating jurisdiction where the underlying facts were "practically identical in the two cases"); *Ft. Recovery Indus., Inc. v. Perry*, 57 N.C. App. 354, 356, 291 S.E.2d 329, 330 (1982) (when personal jurisdiction had been litigated in and determined by court in another state, the foreign judgment was not subject to collateral attack); *Gentile v. Augusta*, No. 4:98-CV-93-BO3, 1998 U.S. Dist. LEXIS 20991, at *6 (E.D.N.C. Dec. 7, 1998) (prior North Carolina state court

decision dismissing action for lack of personal jurisdiction barred plaintiff from relitigating jurisdictional issue in federal court on unchanged facts).

{27} Plaintiff contends that these precedents are not controlling both because it has added a claim of slander of title, and has presented "numerous new and additional jurisdictional facts that support a different result on the issue of personal jurisdiction." (Pl.'s Resp. Br. 11.)

{28} Plaintiff suggests that the Court of Appeals invited it to file an action for slander of title and that its doing so would satisfy jurisdiction when it stated in its opinion that Ebinger's participation in the SCR-Tech Litigation and the demand letters sent to Blohm on his behalf "may have prompted Evonik to initiate the present litigation" but "these actions were not the source of the cause of action and did not 'give rise to' the litigation. Evonik's claim is not a defamation claim, where the cause of action would arise from statements made by the Defendants." *Evonik*, ___ N.C. App. at ____, 712 S.E.2d at 695. If read alone, this language might suggest that a defamation claim based on the letters would render the issue one of specific jurisdiction and that a different jurisdictional conclusion would be reached. However, taken in the overall context of the factual predicate before the Court of Appeals and its reasoning, the Court does not believe that repackaging the facts before the Court of Appeals into a slander of title claim leads to the conclusion that the Court of Appeals would have altered its findings. It is apparent that the Court of Appeals was influenced by the fact that the letters were sent and received in Germany, did not expressly assert ownership, and raised issues that were better resolved by the German courts. And the fact that Plaintiff has now interjected a new cause of action arising from the same facts does not alter the issue of whether the Court of Appeals opinion is preclusive considering that "collateral estoppel precludes the subsequent adjudication of a previously determined issue, *even if the subsequent action is based on an entirely different claim*." *Whiteacre*, 358 N.C. at 16, 591 S.E.2d at 880 (emphasis added).

{29} Rather, Plaintiff's burden is to demonstrate a substantially changed record. To do so, Plaintiff relies primarily on the electronic evidence available in

but not considered in the Initial Action, and new evidence regarding the 2011 Cooperative Agreement.

{30} As an initial matter, it would be inappropriate for this Court to reopen the jurisdictional issue and certainly to issue a jurisdictional finding contradicting the Court of Appeals if the only "new" evidence was that which was available in but not reviewed in the Initial Action. *See Matosantos v. Commer. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1212 (10th Cir. 2001). Rather, the Court has reviewed that evidence in combination with the evidence that admittedly could not have been available in the Initial Action. Having now reviewed the evidence, the Court concludes that the electronic communications, offered but not considered in the Initial Action, do not actually raise materially new facts; it is simply some additional evidence of the meetings and relationships between the Defendants which the Court of Appeals expressly considered and found inadequate to support jurisdiction. The Court concludes that this evidence does not itself warrant a finding that there is a "substantially changed record."

{31} In substance, the electronic communications can be divided into two categories: (1) communications related to Ebinger's participation in the SCR-Tech Litigation; and (2) continued communications related to Ebinger's 2008 visit with SCR-Tech's president in Charlotte. The first category of communications further describe Ebinger's participation in the SCR-Tech Litigation, but the Court of Appeals considered Ebinger's cooperation in that litigation and found the cooperation "in an unrelated litigation in the forum state is insufficient to support a finding that a defendant's contacts properly subject that defendant to personal jurisdiction in our court." *Evonik*, ___ N.C. App. at ____, 712 S.E.2d at 694. The communications in the second category provide further evidence of Ebinger's 2008 meeting in North Carolina with SCR-Tech's president, which the Court of Appeals considered. While arguably the electronic communications better evidence the participant's intent to continue exploring the possibility of working together on issues of reciprocal technology licensing, geographical servicing terms, and joint development of technology, they do not evidence that any actual business

relationship was established.  In finding the 2008 meeting insufficient to justify the exercise of jurisdiction over the Defendants, the Court of Appeals found it significant that no business transaction resulted from the meeting.   The electronic evidence is consistent with that same conclusion.

{32}  Plaintiff must then demonstrate that the newly discovered evidence of the June 23, 2011 Cooperative Agreement justifies further consideration of personal jurisdiction.  The Cooperative Agreement grants SCR-Tech a seven-year license to use technology in China and a right of first refusal to acquire a majority interest in the equity ownership or assets of Ebinger Kat in Germany.  Much like the 2005 settlement agreement considered by the Court of Appeals, the relationship between the contractual obligation and the forum state is too attenuated to be considered a material fact bearing on the analysis of personal jurisdiction.

{33}  Accordingly, the Court finds that reconsideration of the issue of personal jurisdiction is barred by collateral estoppel.  This Court is being asked to relitigate jurisdiction on an essentially unchanged set of facts.  *Current v. Webb*, 220 N.C. 425, 427−28, 17 S.E.2d 614, 615−16 (1941).

## 2.  Minimum Contacts Analysis

{34}  In the event that the matter will again return to the Court of Appeals, the Court alternatively states that it would find that there is no general or specific jurisdiction even if it were the initial court considering the matter.[8]

## a.  General Legal Principles

{35}  The Court of Appeals summarized the principles governing personal jurisdiction, which need not be repeated by this Court.  It noted that in the end, the critical inquiry is whether the exercise of personal jurisdiction over the Defendants

---

[8]  On a separate issue, it is possible that if the jurisdictional issues were being submitted in this case for the first time, the Court would perhaps have a more lenient view on whether Plaintiff should have the benefit of jurisdictional discovery before the Court made a final jurisdictional ruling.  That, however, is not the case.  Here, the jurisdictional motion apparently went to hearing with no request that it be postponed until the completion of jurisdictional discovery and resulted in a final ruling and the appeal.  Under those circumstances, the Court is much less concerned that the issue is being decided without allowing extensive jurisdictional discovery.

satisfies the requirements of the due process clause, and that to satisfy those requirements:

> [t]here must exist certain minimum contacts between the non-resident defendant and the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. There must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

*Evonik*, ___ N.C. App. at ____, 712 S.E.2d at 694 (quoting *A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 259–60, 625 S.E.2d 894, 899 (2006)). The relationship between the defendant and the forum must be "such that [the defendant] should reasonably anticipate being haled into court there." *Tom Togs, Inc. v. Ben Elian Indus. Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 786 (1986).

{36} There are multiple factors the courts use in examining whether personal jurisdiction should be exercised; no single factor controls, and the process does not reduce to any mechanical formula. *Esoterix Genetic Labs., LLC v. McKey*, 2011 NCBC 32 ¶ 38 (N.C. Super. Ct. Aug. 22, 2011),http://www.ncbusinesscourt.net/opinions (citations omitted).

{37} A single contract between a non-resident defendant and a North Carolina citizen may but does not necessarily establish sufficient minimum contacts, depending on whether that contract has a substantial connection with the forum State. *Tom Togs*, 318 N.C. at 367, 348 S.E.2d at 786. Further, "where the defendant deliberately has . . . created continuing obligations between himself and residents of the forum, he manifestly has availed himself to the privilege of conducting business there." *Barloworld Fleet Leasing, LLC v. Palmetto Forest Prods., Inc.*, 199 N.C. App. 228, 232, 681 S.E.2d 498, 502. If the plaintiff is not a resident of the forum State, more extensive contacts are necessary to support the exercise of personal jurisdiction. *Bruggeman*, 138 N.C. App. at 618, 532 S.E.2d at 219 (citing *Mabry v. Fuller-Schuwayer Co.*, 50 N.C. App. 245, 250, 273 S.E.2d 509, 512 (1981).

{38} Personal jurisdiction may be either specific or general. *Tom Togs*, 318 N.C. at 365, 348 S.E.2d at 786. Specific jurisdiction may be exercised where a case arises from or is related to the Defendants' contacts with the forum state. *Esoterix*, 2011 NCBC 32 ¶ 41. When specific jurisdiction exists, "a defendant has 'fair warning' that he may be sued in a state for injuries arising from activities that he 'purposefully directed' toward that state's residents." *Id.* at 366, 348 S.E.2d at 786. General jurisdiction "exists when the defendant's contacts with the state are not related to the cause of action but the defendant's activities in the forum are sufficiently 'continuous and systematic.'" *Skinner v. Preferred Credit*, 361 N.C. 114, 119, 638 S.E.2d 203, 208 (2006). "The threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *Cambridge Homes of N.C. L.P. v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 412, 670 S.E.2d 290, 295 (2008) (internal quotations omitted).

{39} Plaintiff asserts that specific jurisdiction is present because its claim for slander of title arises out of, or is related to, Ebinger's participation in the SCR-Tech Litigation and the demand letters sent to Blohm in Germany. As an initial matter, it is not at all clear that these letters can be considered "contacts with the forum state" when they were sent and received in Germany. The argument would be instead that they are connected to North Carolina because they infringe on the rights of a North Carolina business. But the Court of Appeals effectively rejected this argument when it articulated that while Defendants' participation in the SCR-Tech Litigation and the letters sent to Blohm in Germany may have prompted Steag "to initiate the present litigation, these actions are not the source of the cause of action and did not 'give rise to' the litigation." *Evonik*, ___ N.C. App. at ____, 712 S.E.2d at 695. As the Court has earlier noted, it does not believe the analysis is different because Plaintiff now asserts a claim for slander of title.

{40} Plaintiff, however, contends that the slander of title arises "by virtue of statements made in North Carolina and elsewhere, [in which] Defendants willfully, wrongfully, and without justification have claimed ownership of the European

Patent." (Compl. ¶ 39.)   Again, the logic of the Court of Appeals holding remains persuasive:

> [t]here have been no direct challenges to [Steag's] ownership based on the assignment of the United States Application.  The only challenge to [Steag's] ownership is the "cloud" placed on that ownership by a series of hypothetical circumstances rooted initially in Frank Ebinger's and Ebinger Kat's assertion that Blohm's application for the European Patent was in violation of an employment agreement between Blohm and [the Defendants].

*Evonik*, ___ N.C. App. at ____, 712 S.E.2d at 695.  That logic applies whether Plaintiff invokes either general or specific jurisdiction.  Like the Court of Appeals, this Court believes that the forum with which these claims are most connected is Germany. *See Evonik*, ___ N.C. App. at ____, 712 S.E.2d at 695.

{41}  Plaintiff does not claim that its claims arise from the 2011 Cooperation Agreement.  Accordingly, evidence of that agreement would be governed by a general jurisdictional analysis.

{42}  The Court does not believe that this new agreement, even when combined with all the additional facts, rises to the level of contacts adequate to support the exercise of personal jurisdiction.  Neither the 2005 settlement agreement nor the 2011 Cooperative Agreement have a substantial connection with North Carolina.  *See Tom Togs*, 318 N.C. at 367, 348 S.E.2d at 786.  The Cooperative Agreement instead has a substantial connection to China, as the licensed technology will be used there, and Germany, as the assets subject to the right of first refusal are located there.

{43}  The Court does not believe there is an adequate showing to justify either the exercise of jurisdiction or allowing additional jurisdictional discovery before making that determination.  It further notes that allowing this litigation to proceed in North Carolina would be a substantial inconvenience to the Parties.  Blohm and Ebinger are German citizens and residents; and the Plaintiff and Defendant companies each have a principal place of business in Germany.

{44} In sum, as an initial matter, the Court believes that the issue of personal jurisdiction was determined by the Court of Appeals in the Initial Action and that the Court of Appeals decision precludes reconsideration of the issue by this Court as the combined record does not constitute a substantially changed set of facts. Alternatively, when viewing the record which Plaintiff contends to be a more complete record, the Court concludes that the Defendants do not have the requisite minimum contacts with this State and that all of the factors traditionally considered militate against the exercise of personal jurisdiction.

## VI. CONCLUSION

{45} Accordingly, Defendants' Motion pursuant to Rule 12(b)(2) is GRANTED and Plaintiff's Complaint is DISMISSED.

IT IS SO ORDERED, this 6th day of January, 2012.