Prospect Mktg. Grp., Inc. v. Chasnan, Inc., 2013 NCBC 47.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | 12 CVS 9573 |

| | | |
|---|---|---|
| PROSPECT MARKETING GROUP, INC., | ) | |
| Plaintiff | ) | |
| | ) | **OPINION AND ORDER ON** |
| v. | ) | **DEFENDANTS' MOTION TO DISMISS** |
| | ) | **FOR LACK OF PERSONAL** |
| CHASNAN, INCORPORATED d/b/a | ) | **JURISDICTION** |
| CASTLE ADVERTISING and DAVID | ) | |
| CASTLE, | ) | |
| Defendants | ) | |

THIS MATTER comes before the court upon Defendants Chasnan, Incorporated d/b/a Castle Advertising and David Castle's Motion to Dismiss for Lack of Personal Jurisdiction ("Motion") pursuant to Rule 12(b)(2) of the North Carolina Rules of Civil Procedure ("Rules"); and

THE COURT, having reviewed the Motion, briefs in support and in opposition to the Motion, arguments of counsel and other appropriate matters of record, CONCLUDES that the Motion should be GRANTED.

> *Maginnis Law, PLLC, by Edward H. Maginnis, Esq., and T. Shawn Howard, Esq., for Plaintiff Prospect Marketing Group, Inc.*
>
> *Robinson Bradshaw & Hinson, P.A., by Edward F. Hennessey, IV, Esq., and Kate E. Payerle, Esq., for Defendants Chasnan, Incorporated d/b/a Castle Advertising and David Castle.*

Jolly, Judge.

<u>PROCEDURAL HISTORY</u>

[1] On July 10, 2012, Plaintiff filed a Complaint against Defendants Chasnan, Incorporated d/b/a Castle Advertising ("Chasnan") and David Castle ("Castle") (collectively, "Defendants").

[2]     On October 19, 2012, Defendants filed the Motion.  It has been fully briefed and argued and is ripe for determination.

FACTUAL BACKGROUND

The Complaint alleges claims ("Claim(s)") for breach of contract ("Claim One"), violation of N.C. Gen. Stat. § 75-1.1 ("Claim Two"), fraud ("Claim Three") and negligent misrepresentation ("Claim Four"). It seeks temporary and permanent injunctive relief ("Claim Five") against both Defendants.

Among other things, the Complaint alleges the following:

[3]     Plaintiff is a corporation existing under the laws of the State of Nevada, with its principal place of business in New York.

[4]     Defendant Chasnan is incorporated and has its principal place of business in California.

[5]     Defendant Castle is a citizen and resident of California.

[6]     Defendant Castle is the principal officer and shareholder of Defendant Chasnan.

[7]     Plaintiff is a marketing company that publishes *Business Leader Magazine*, a regional magazine that is published in nine markets, including the Research Triangle, Triad and Charlotte areas of North Carolina.

[8]     Defendant Chasnan is a marketing agency that provides lead generation and other direct mail and internet marketing services.  In its regular course of business, Chasnan promotes its clients' interests through Internet postings as well as direct mail flyers.

[9]    At times material and over a number of years, Chasnan, at the direction of Castle, directed flyers to North Carolina on behalf of clients.[1] Defendants made contact with North Carolina residents more than one million times based upon a "1% conversion rate from contact attempts to potential leads."[2] Defendants earned "hundreds of thousands of dollars" that is directly attributable to their work in North Carolina.[3]

[10]   On or about December 31, 2011, Plaintiff and Defendants executed an "Asset Purchase Agreement" ("Agreement") whereby Defendants transferred all rights, title and interest in the assets of Defendant Chasnan to Plaintiff.

[11]   Defendants "made a number of false representations" in the course of negotiating the Agreement.[4]

[12]   Defendants further breached the express terms of the Agreement by collecting and failing to remit certain accounts receivable[5] and breaching a covenant not to compete included in the Agreement.[6]

---

[1] Pl.'s Resp. in Opp'n to Defs.' Mot. Dismiss Pursuant to R. 12(b)(2) ("Response Brief") 1-4.
[2] *Id.* at 3.  Plaintiff also alleges that the conversion rate was included in promotional materials used by Defendants to advertise their services.  *Id.* Defendants challenge Plaintiff's calculation on the grounds that the 1% return rate is only applicable for print mail pieces, and that Plaintiff applies the rate to internet advertisements developed and maintained by a third party. Defs.' Reply to Pls.' Resp. in Opp'n to Defs.' Mot. Dismiss Pursuant to R. 12(b)(2) ("Reply Brief") 3-4.
[3] Response Brief at 2.
[4] Compl. ¶ 8.
[5] *Id.* ¶ 11.
[6] *Id.* ¶¶ 13-15.

## DISCUSSION

[13]    If a court lacks personal jurisdiction over a defendant, dismissal pursuant to a motion under Rule 12(b)(2) is proper.

[14]    Personal jurisdiction describes the power of a given court to require a litigant to appear to defend a lawsuit.  This requirement is grounded in the due process guaranteed by the Fourteenth Amendment of the United States Constitution.  *Kulko v. California Superior Court*, 436 U.S. 84, 91 (1978).  Personal jurisdiction comes in two varieties:  general jurisdiction and specific jurisdiction.  *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 366 (1986).

[15]    A state court can exercise general personal jurisdiction over individuals domiciled in the state, regardless of where the events giving rise to the action occurred.  A corporation is subject to general personal jurisdiction in the state of its incorporation, in the state of its principal place of business, or "nerve center," *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1187 (2010), or in any jurisdiction where the corporation is constructively "at home" as a result of continuous and systematic contacts with the forum state, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

[16]    Specific jurisdiction requires that the cause of action arise directly from the defendant's purposeful contacts with the forum.  *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1989).  *Accord Steag Energy Services GMBH v. Ebinger*, 2012 NCBC 2, ¶ 38 (January 6, 2012) (noting that "[w]hen specific jurisdiction exists, a defendant has 'fair warning' that he may be sued in a state for injuries arising from activities that he 'purposefully directed' toward that state's residents") (citations omitted).  Here, Plaintiff

has not alleged that the cause of action arises out of Defendants' contacts with North Carolina, but instead arises out of contractual obligation under the Agreement, which itself has no relation to any of Defendants' alleged contacts with the forum. Accordingly, this court is not able to exercise specific jurisdiction over Plaintiff's Claims.

[17]    A state may modify or amend its procedure for exercising personal jurisdiction by statute, but can extend personal jurisdiction no further than provided by the Fourteenth Amendment. *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. at 364. The North Carolina Supreme Court has acknowledged that North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4 (hereinafter, references to the North Carolina General Statutes will be to "G.S."), was intended to and did in fact "make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Dillon v. Numismatic Funding Corporation*, 291 N.C. 674, 676 (1977).

<u>North Carolina Long-Arm Statute</u>

[18]    The analysis of whether a North Carolina court may exercise personal jurisdiction is two-fold. First, there must be statutory authorization for the exercise of jurisdiction in the long-arm statute, and, second, the jurisdiction must be exercised in a manner consistent with the due process clause. *Dillon*, 291 N.C. at 676.

[19]    North Carolina's long-arm statute provides jurisdiction over claims arising outside the State against a party who, at the time of service, "is engaged in substantial activity within this State." G.S. § 1-75.4(1)(d). The statute plainly requires that the defendant be engaged in such substantial activity at the time of service. Here, the Complaint alleges that all the potential contacts with North Carolina made by Defendants predated the Agreement. As a result, Defendants were not engaged in

substantial activity following closing of the sale transaction. Plaintiff's Complaint was not filed contemporaneously with the close of the Agreement and, therefore, at the time of filing and service of the Complaint, the alleged activity on behalf of Defendants had ceased. As a result, based on the plain language of G.S. 1-75.4(1)(d), the exercise of jurisdiction is improper.

[20]    As Plaintiff notes, G.S. 1-75.4(1)(d) was intended to extend personal jurisdiction to the greatest extent due process would allow. *Dillon*, supra. However, the North Carolina Supreme Court has never ignored the literal language of the statute in favor of such a broad interpretation. In *Skinner v. Preferred Credit*, the court refused to allow the exercise of personal jurisdiction under G.S. 1-75.4(1)(d) based on the plain language of that statute. 361 N.C. 114, 119 (2006).

### General Jurisdiction

[21]    Were this court to find and conclude that the circumstances presented here warrant an exception from the plain language of G.S. 1-75.4(1)(d), personal jurisdiction still would not be proper under a traditional general jurisdiction analysis.

[22]    The crux of whether a North Carolina court will be able to exercise general personal jurisdiction is whether a defendant maintained such continuous and systematic contacts "as to render [it] essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851. The link between the defendant and the forum must be such that the defendant "should reasonably anticipate being haled into court there." *Tom Togs, Inc.*, 318 N.C. at 365. "The threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *Cambridge Homes of NC, L.P., v. Hyundai Constr., Inc.*, 194 N.C.App. 407, 412 (2008) (citations omitted). In determining whether sufficient contacts exist, courts employ a multi-factor analysis

considering (a) the quantity of the contacts, (b) the nature and quality of the contacts, (c) the source and connection of the claim to the contacts, (d) the interests of the forum state and (e) convenience to the parties. *Rosetto USA, Inc. v. Greensky Fin. LLC*, 191 N.C. App. 196, 200 (2008). No one factor in the analysis is determinative.

[23] Plaintiff contends here that Defendant Chasnan, at the direction of Defendant Castle, maintained a number of contacts with North Carolina. These contacts were largely in the form of direct mail sent by Chasnan "on behalf of its clients into North Carolina."[7] In its Response Brief, Plaintiff further contends that these contacts numbered in excess of one million, based upon "a 1% conversion rate from contact attempts to potential leads."[8] Plaintiff alleges that Defendants earned "hundreds of thousands of dollars" as a result of their work in North Carolina.[9] Plaintiff does not allege that Defendant Chasnan has or ever had a registered agent or employees in North Carolina, any office in North Carolina or otherwise maintains a physical presence anywhere outside San Diego, California.

[24] Applying the factors set forth in *Rosetto USA*, and even assuming the number of pieces of direct mail sent by Defendant Chasnan on behalf of its clients is as high as Plaintiff contends,[10] these contacts do not support the exercise of general jurisdiction over Defendants.

[25] The commercial nature of the contacts alleged by Plaintiff tends to weigh more heavily in favor of exercising jurisdiction. *See, e.g., Hankins v. Somers*, 39 N.C.

---

[7] Compl. ¶ 6.
[8] Response Brief at 3.
[9] *Id.* at 2.
[10] There is significant dispute between the parties through pleadings and affidavits over the number of potential contacts present. Defendants contend that Plaintiff misuses the 1% conversion rate provided by Defendant Chasnan in marketing materials by including internet postings made by Defendants. *See id.*, Reply Brief at 3-4.

App. 617 (1979) (dismissing for lack of personal jurisdiction a defendant whose contacts were not commercial in nature but denying the motion with regard to defendant who was engaged in ongoing commercial activity within the State).  However, the U.S. Supreme Court held in *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 418 (1984), that "[m]ere purchases, even if occurring at regular intervals, are not enough to warrant a state's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."  Here, Plaintiff's cause of action arises out of the negotiation, execution and subsequent breach of a contract. None of these events are alleged to have occurred in North Carolina, and therefore Plaintiff has not alleged any connection between the alleged contacts and their cause of action.

[26]    Plaintiff has not alleged that North Carolina has any meaningful interest in hearing this civil action in this state.

[27]    Further, as the pleadings indicate, all parties are either domiciled or maintain a physical presence in California.  All relevant witnesses to the agreement and guardians of relevant documents are in California.[11]  As a result, maintaining the action in North Carolina is a tremendous inconvenience.

[28]    In addressing the level of inconvenience and the forum's interest, Plaintiff places significant reliance in its Response Brief on the existence of a North Carolina choice of law provision in the Agreement.[12]  However, such clauses are not determinative of the issue of personal jurisdiction.  *See Cherry Bekaert & Holland v. Brown*, 99 N.C.App. 626, 635 (1990) (noting that a choice of law provision which states that the forum State's laws will apply in any breach of contract action is "a factor in

---

[11] Affidavit of David Castle, ¶¶ 21-22.
[12] Response Brief at 8.

determining" fairness of litigating in the state, but reaching its holding in favor of exercising jurisdiction by relying heavily on other factors). *Accord Burger King v. Rudzewicz*, 471 U.S. 462, 482 (1985) (holding that choice of law provisions are not determinative, but may be considered).

[29]    Cases that rely heavily on choice of law provisions as a determining factor in a personal jurisdiction analysis typically involve one resident and one nonresident contracting party. *See id.* (noting that the choice of law provision was sufficient to establish personal jurisdiction only when coupled with the "20 year interdependent relationship" between the nonresident defendant and the forum state). In that context, the choice of law provision may outweigh the inconvenience to the nonresident party in litigating in the forum because the choice of law provision put the party on notice to the possibility of litigating in the forum. However, in the instant case, neither party is a resident of North Carolina and there is scant evidence to show that such a relationship existed. As a result, the choice of law provision in this action is insufficient to tip the scales in favor of exercising personal jurisdiction.

[30]    All that Plaintiff has alleged is that at some point or points in time,[13] Defendant Chasnan sent or caused to be sent an unspecified number of pieces of direct mail into North Carolina. Plaintiff has not established when these contacts occurred or with what frequency. Ultimately, this Court finds and concludes that the quantity and quality of the contacts alleged are insufficient to establish general jurisdiction over Defendants.

NOW THEREFORE, based on the foregoing, it is hereby ORDERED that:

---

[13] The only reference as to the timing of the alleged contacts appears in the affidavit of Eran Salu in which the contacts are contended to all have occurred "Prior to 12/31/2011," without any specificity. Affidavit of Eran Salu, ¶¶ 10-20.

[31]     Defendants' Motion to Dismiss For Lack of Personal Jurisdiction is GRANTED.

[32]     Plaintiff's Claims alleged against Defendants Chasnan, Incorporated d/b/a Castle Advertising and David Castle are DISMISSED.

[33]     Taxable costs are charged to Plaintiff.

This the 10th day of October, 2013.